Alexa SMITH, Faith Morgan, and David Boyd, on behalf of themselves and all other similarly situated, Respondents/Cross–Appellants,

v.

CITY OF ST. LOUIS, Appellant.

No. ED 98263.

Missouri Court of Appeals,
Eastern District,
Division One.

June 11, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 2013.

Application for Transfer Denied Oct. 29, 2013.

Patricia Hageman, City Counselor, Michael A. Garvin, St. Louis, Mo, for appellant.

Russell F. Watters, Patrick A. Bousquet, Brown & James, P.C., St. Louis, MO, for respondents.

KURT S. ODENWALD, Judge.

### Introduction

This appeal involves a challenge to the validity of an ordinance regulating what are commonly known as "red light cameras" in the City of St. Louis ("City"). Respondents Alexa Smith ("Smith") and Faith Morgan ("Morgan") (collectively, "Respondents") received red light camera tickets stating that it had been determined by City's use of automated red light cameras that they had violated City's traffic code. Respondents challenged City's red light camera ordinance ("Ordinance") in a seven-count, purported class-action petition. Respondents alleged the Ordinance violated their due process rights, the privilege against self-incrimination, and the Confrontation Clause, and claimed that the Ordinance was void because it conflicted with state law. Respondents also asserted claims of unjust enrichment and money had and received, and they sought a permanent injunction against enforcement of the Ordinance.

After considering competing motions for summary judgment, the trial court entered summary judgment in favor of City on Respondents' claims based upon violation of the privilege against self-incrimination, violation of the Confrontation Clause, unjust enrichment, and money had and received. The trial court entered summary judgment in favor of Respondents on their claims based upon procedural due process and conflict with state law. Respondents' request for permanent injunction was dismissed without prejudice.

City now appeals the trial court's entry of summary judgment in favor of Respondents on their claims of procedural due process violations and the Ordinance's conflict with state law. Respondents cross-appeal the trial court's entry of summary judgment in favor of City on their claim that the Ordinance violated their right against self-incrimination and on Respondent Smith's claim for a refund of the fine she paid under the theories of unjust enrichment and money had and received.

Because Respondent Morgan has an adequate remedy at law and may raise her procedural due process claims in municipal court, we reverse the judgment of the trial court granting judgment in favor of Morgan on said claims. Because the enactment of reasonable traffic regulations is a proper exercise of City's police power, and because City is a constitutional charter city possessing broad authority to enact legislation, we also reverse the trial court's judgment in favor of Respondents on their claim that the Ordinance conflicts with state law. However, since the Ordinance does not comply with the mandatory notice requirements of the Missouri Supreme Court rules, we affirm the trial court's judgment in favor of Smith invalidating the Ordinance, although not on procedural due process grounds. Because the Ordinance is void due to its failure to meet the requirements of Missouri Supreme Court rules, we do not reach the issue of whether the Ordinance violates the right against self-incrimination. Finally, we affirm the judgment of the trial court in favor of City on Smith's claims for restitution because Smith is barred from receiving a refund of the fine she voluntarily paid.

### Factual and Procedural History

On November 8, 2005, City approved Ordinance 66868, which authorizes the in-

stallation and use of red light cameras at dangerous intersections to detect and prosecute violations of existing City traffic ordinances pertaining to traffic signals. The Ordinance creates a presumption that the owner of the motor vehicle was the operator of the vehicle at the time and place of the violation, thereby allowing prosecution against the owner of the vehicle. That presumption may be rebutted by a statement from the owner that, at the time of the violation, the vehicle was being operated by a person other than the owner or that the vehicle or its license plate was stolen. The Ordinance does not include a specific penalty provision, but is subject to City's general penalty provision for violations of traffic ordinances, which provides for a fine of not more than $500 or confinement for not more than 90 days in jail, or both.

City began operation of the red light cameras in May 2007. The red light cameras capture images only of the offending vehicle and its license plate, and not an image of the driver's face. A police officer then reviews the recorded images collected by the red light cameras and determines whether probable cause exists to believe that a red light violation has occurred. If the officer finds probable cause exists, a Notice of Violation is issued by the City to the registered owner of the vehicle. The Notice of Violation directs the owner to pay a $100 fine or fill out the attached affidavit of non-responsibility, and states that payment of the fine constitutes an admission of guilt or liability. The Notice of Violation also states that if the owner fails to pay the fine by the due date or to appear in court on his or her court date, "further legal action may be taken against you by the City of St. Louis." No court date is provided on the Notice of Violation, and no information is provided to inform the owner that he or she may request a court date. The Notice of Violation provides that a violation of the Ordinance is a non-moving violation and that no points will be assessed to the recipient's license.

If an owner does not pay the $100 fine by the due date indicated on the Notice of Violation, City mails a Final Notice to the owner. The Final Notice states that the owner must appear in St. Louis City Court on a specific date and time. The Final Notice informs the owner that it is in his or her "best interest to pay [the fine] immediately," and that failure to respond to the Final Notice may result in further legal action by City.

On September 6, 2007, City issued Smith and her mother, Deborah Smith, a Notice of Violation for failing to completely stop before making a right-hand turn against a red traffic signal. Smith and her mother co-owned the vehicle, which was also used by her father and boyfriend; however, no one could recall who was driving the vehicle on the date and time listed on the Notice of Violation. Smith forgot to pay the fine by the due date, and on October 10, 2007, City issued Smith a Final Notice stating that she must appear in St. Louis City Court. However, the court date listed on the Final Notice was March 23, 2007, a date six months prior to the alleged violation. The Final Notice admonished Smith that it was in her "best interest to pay this immediately" and that "failure to respond may result in further legal action by the City of St. Louis." Smith feared a warrant might be issued for her arrest given the language of the Final Notice, and she immediately paid the $100 penalty.

On November 30, 2009, City issued Morgan a Notice of Violation for failing to completely stop before making a right-hand turn against a red traffic signal. Morgan did not pay the fine, and on January 4, 2010, City issued her a Final Notice.

The Final Notice said Morgan must appear in St. Louis City Court on January 28, 2010. Morgan's Final Notice also stated that it was in her best interest to pay the fine immediately or face further legal action by the City of St. Louis. Morgan did not appear in court and did not pay the fine.

On September 20, 2010, Respondents filed a Third Amended Class Action Petition ("Third Amended Petition") in the Circuit Court for the City of St. Louis on behalf of two proposed classes.[1] The first proposed class was made up of Missouri citizens who received a Notice of Violation and paid the $100 fine. Subclass 1 was represented by Smith. The second proposed class consisted of Missouri citizens who received a Notice of Violation, had not paid the $100 fine, and whose cases were still pending in Municipal Court. Subclass 2 was represented by Morgan.[2]

The Third Amended Petition asserted seven counts, including: the Ordinance violates the due process guarantees of Article I, Section 10 of the Missouri Constitution (Count I); the Ordinance compels the accused to testify against himself or herself in violation of Article I, Section 19 of the Missouri Constitution (Count II); the Ordinance deprives the accused of the right to confront their accusers in violation of Article Section 18(a) of the Missouri Constitution (Count III); unjust enrichment on behalf of Subclass 1 (Count IV); money had and received on behalf of Subclass 1 (Count V); a request for permanent injunction on behalf of Subclass 2 (Count VI); and the Ordinance conflicts with multiple Missouri statutes (Count VII). Respondents requested relief in the form of restitution, declaratory and injunctive relief, punitive damages, pre-judgment interest, post-judgment interest, and attorneys' fees and costs.

City filed a motion for partial summary judgment against Smith and all members of Subclass 1 based on the doctrines of voluntary payment, waiver, and estoppel. Respondents also filed individual motions for partial summary judgment on the constitutional claims alleged in Counts I, II, and III, and on the allegations that the Ordinance conflicts with state law and is therefore void. City then filed a cross-motion for summary judgment with respect to all Respondents' claims.

On May 20, 2011, the trial court issued an order and partial judgment ("Partial Judgment") granting in part and denying in part City and Respondents' motions for summary judgment. The trial court found that although Smith was not precluded from asserting her constitutional claims because of waiver or estoppel, City was entitled to partial summary judgment as to Smith's claim for damages under the voluntary payment doctrine. The trial court also entered summary judgment for City on the constitutional issues related to self-incrimination and the Confrontation Clause, but found that summary judgment was improper for either party on the claim of due process violations because questions of fact existed as to whether a summons with a court date was provided to alleged violators with the initial Notice of Violation. Finally, the trial court entered summary judgment in favor of Respondents on

---

1. The petition also proposed a third subclass represented by plaintiff David Boyd, who received a total of five tickets despite reporting his vehicle stolen. However, the trial court found Boyd did not have standing to bring any claims because his violations were dismissed. As a result, the trial court dismissed Boyd's claims. Respondents/Cross–Appellants do not appeal this issue.

2. There is no evidence in the record that the trial court determined class certification was appropriate.

their claim alleging the Ordinance was void because it conflicted with state law. Although the trial court found that the Ordinance did not conflict with state law for the reasons argued by Respondents, the trial court held the Ordinance was void because City lacked authority to enact the Ordinance absent specific enabling legislation by the State of Missouri.

After the trial court entered its Partial Judgment, Respondents and City filed motions for summary judgment on Count I. Respondents argued that the Ordinance violated the procedural due process rights of both Respondents because the Notices of Violation instructed Respondents to pay the $100 fine without providing the opportunity for a court hearing. City argued that the Final Notices sent to Smith and Morgan cured any procedural due process concerns because the Final Notices provided Respondents with a clear and unambiguous notification of their court dates. City also filed a motion for reconsideration of the Partial Judgment with regard to Count VII, specifically challenging the trial court's independent conclusion that City lacked authority to enact the Ordinance.

On February 17, 2012, the trial court entered an order and amended final judgment ("Final Judgment") denying City's motion for reconsideration. The trial court made final its grant of summary judgment in favor of City on Count II (self-incrimination) and Count III (Confrontation Clause). The trial court further found that, because Smith was not entitled to a refund of fines already paid due to the voluntary payment doctrine, Smith's claims for unjust enrichment and money had and received failed as a matter of law. The trial court granted City summary judgment on Counts IV and V. With regard to Respondent's request for a permanent injunction in Count VI to prohibit City from enforcing the Ordinance, the trial court held that because it declared the Ordinance void, City could not enforce the Ordinance, and therefore the claim for injunction was not ripe. Count VI was dismissed without prejudice. Finally, the trial court found the Ordinance violates constitutional due process requirements because the Ordinance does not require a summons or court date to be provided with the Notice of Violation, and the Notice does not inform the accused of the right to contest the ticket in court. The trial court granted summary judgment in favor of Respondents on Count I. This appeal follows.

## Points on Appeal

City presents two points on appeal. In its first point on appeal, City argues that the trial court erred in granting summary judgment to Respondents on the conflict with state law claims in Count VII of their Third Amended Petition. Specifically, City claims the trial court erred in considering the summary judgment claims with regard to Count VII because the motion was based upon a claim and legal theories that were not pleaded in Respondents' petition. City also avers that the trial court's substantive holding that City lacked authority to enact the Ordinance absent State enabling legislation is erroneous because the Missouri Constitution affords charter cities all power the legislature is authorized to grant without need for an enabling statute, and that Section 304.120.2(1) [3] grants such authority in any event.

In its second point on appeal, City claims that the trial court erred in granting summary judgment on Respondents' procedural due process claims in Count I for three reasons. With regard to Re-

---

**3.** All statutory references are to RSMo. Cum. Supp. (2010).

spondent Smith, City argues Smith waived her right to contest the deficiency of the notice by admitting liability and paying her fine. With regard to Respondent Morgan, City argues that Morgan waived her right to challenge the constitutional sufficiency of the Ordinance's procedures because she failed and refused to use those procedures. Lastly, offering a substantive response to Respondents' due process claims, City asserts the Final Notice provided the requisite due process notice to Respondents of the court dates, times, and locations in the event they wished to contest their violations.

Respondents also present two points on cross-appeal. First, Respondents argue the trial court erred in entering summary judgment against Smith and denying her the legal right to a refund of the fine paid by her because she made a submissible case of unjust enrichment and money had and received. Respondents also argue City did not meet its burden of showing that it was entitled to judgment on its affirmative defense of voluntary payment. In their second point on cross-appeal, Respondents claim the trial court erred in granting summary judgment against Respondents on Count II because City's enforcement of the Ordinance unconstitutionally requires the owner of a vehicle to testify against himself or herself in order to challenge the Ordinance.

### Standard of Review

This Court reviews the grant of summary judgment *de novo* and gives no deference to the trial court's findings or determinations. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Calvert v. Plenge*, 351 S.W.3d 851, 854–55 (Mo.App. E.D.2011).

"We will affirm where the pleadings, depositions, affidavits, answers to interrogatories, exhibits, and admissions establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* This Court must affirm a grant of summary judgment if it is sustainable under any theory, even if on an entirely different basis than that used by the trial court, provided we incorporate principles raised in the petitions. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995).

### Discussion

**I. The trial court properly granted summary judgment on Count I (procedural due process) in favor of Smith, but erred in granting summary judgment on Count I in favor of Morgan.**

We first address City's second point on appeal because it raises a threshold issue: whether the trial court erred in granting summary judgment to Respondents on their procedural due process claims because of waiver. First, did Smith waive her right to contest the alleged constitutional violation when she paid her fine for the violation? Second, did Morgan waive her due process claims because she has not used the procedures afforded by City to contest the Ordinance violation? Finally, if these waiver issues are resolved in favor of allowing Respondents to pursue their due process claims, City argues the trial court erred in finding that the Ordinance violates procedural due process because the Final Notice sent to Respondents provided sufficient notice of the court dates, times, and locations in the event either Respondent wished to contest the violation notices.

## A. *Respondent Alexa Smith*

■ City reasons that Smith waived her right to contest her violation and any constitutional issues related thereto by paying her fine, which constituted an admission of guilt and liability. City posits that Smith's payment of the fine and admission of guilt operate as a complete waiver of any claims she may have regarding the violation. City's argument is premised on Rule 37.49(e),[4] which states that payment of a fine for a traffic violation constitutes a guilty plea and waiver of trial. Rule 37.49(e). Rule 37.49 applies only to ordinance violations that are encompassed within the authority of a violation bureau. Rule 37.49(e) states:

(e) Within the time fixed by the judge and subject to the judge's order, any person charged with an animal control, housing, or traffic violation, except violations requiring court appearance, may deliver by mail, automatic teller machine, or as otherwise directed the specified amount of the fine and costs to the bureau. This delivery constitutes a guilty plea and waiver of trial.

The uncontroverted summary judgment evidence indicates that cases arising from the red light photo enforcement program of the City of St. Louis are brought in municipal court, and that the municipal court supervises City's traffic violation bureau. City also provided an affidavit from the clerk of the municipal court stating that, pursuant to the designation and direction of the municipal court judges, the St. Louis traffic violation bureau accepts and receives payments of the $100 red light enforcement program fines. Rule 37.49(e) therefore applies to red light camera violations.

City's position that Rule 37.49 mandates a finding that Smith waived her right to contest her violation overlooks the fact that the Notice of Violation mailed to Smith does not meet the requirements of Rule 37.33, which governs ordinance violations and specifies the required contents of a Violation Notice. Subsection (b) of Rule 37.33 states:

When a violation has been designated by the court to be within the authority of a violation bureau pursuant to Rule 37.49, the accused *shall also be provided* the following information:

(1) The specified fine and costs for the violation; and

(2) That a person must respond to the violation notice by:

(A) Paying the specified fine and court costs; or

(B) *Pleading not guilty and appearing at trial.*

Rule 37.33(b) (emphasis added). We note that Rule 69.18 of the 22nd Judicial Circuit Local Rules, which establishes the Traffic Violations Bureau for the City of St. Louis, also states that prior to pleading guilty, waiving trial, and paying the fine, a person charged with a traffic offense "shall, prior to such plea, waiver and payment, be informed of his right to stand trial, [and] that his signature to a plea of guilty will have the same force and effect as a judgment of the Court...." Local Rule 69.18.2(A).

Despite the requirements of Rule 37.33 and Local Rule 69.18, the uncontroverted summary judgment evidence shows that City's Notice of Violation does not contain the mandatory language informing Smith that she could plead not guilty and appear at trial. The only options provided to Smith by the Notice of Violation were for her to pay the fine, dispute the notice by mailing in an affidavit of non-responsibility, or face "further legal action" if she did

---

4. All rule references are to Mo. R. Civ. P. (2010).

neither. The Notice of Violation lacked any information informing Smith of her right to a court hearing or how to obtain a court date.

Because the Notice of Violation did not inform Smith of her right to plead not guilty and appear at trial, we reject City's contention that her payment of the fine constituted "a conscious decision against attempting to assert any defenses, avoidances or other means of contesting her liability for the offense. . . ." [5] City may not disregard the requirements of Rule 37.33 and its own Local Rule 69.18 by failing to provide Smith notice of her right to plead not guilty and contest the violation in court, and later claim that Smith waived those rights because she paid the fine and did not contest the violation in court. By so doing, City clutches to two irreconcilable positions. More simply stated, City cannot have it both ways.

Furthermore, the uncontroverted evidence demonstrates that the Notice's failure to inform Smith of her right to contest the ticket affected her willingness to plead guilty and pay the fine. The summary judgment evidence shows that Smith believed she only had two options—either pay the fine or send in the affidavit of non-responsibility naming the person who was driving at the time of the violation. Because Smith did not know who was driving the vehicle at the time of the violation, and because the affidavit includes a warning that any false representation may subject the ticket holder to criminal penalties, Smith understood her only option as stated on the Notice was to pay the fine rather than face further legal action. By failing to notify Smith of her ability to contest the Notice of Violation, in conjunc-

tion with the admonition that her failure to pay the fine could institute further legal action against Smith, City left Smith without a meaningful choice. *See Zilba v. City of Port Clinton, Ohio,* No. 3:11 CV 1845, 924 F.Supp.2d 867, 874–76, 2013 WL 596430, at *4–5 (N.D.Ohio Feb. 15, 2013) (plaintiff had standing to challenge ordinance despite paying fine when ticket failed to notify plaintiff that he could contest the citation and also provided for additional criminal penalties if he failed to pay). Given the summary judgment facts before us, we hold that Smith did not waive her right to challenge the Ordinance or the process under which it was enforced when she paid the fine as directed in the Notice of Violation. *See id.*

### B. Respondent Faith Morgan

■ City next argues that Morgan waived her right to challenge the sufficiency of the procedures afforded by the City to contest her red light camera violation because she never availed herself of those procedures. City argues that Morgan therefore lacks standing to raise any procedural due process claims in this proceeding. We do not reach the issue of Morgan's standing to pursue her constitutional claim because Morgan seeks only equitable relief in this action, and she has an adequate remedy at law.

■ In its Final Judgment, the trial court found that Morgan only asserted a claim for injunctive relief in the Third Amended Petition. An injunction is an equitable remedy. Equitable relief is warranted only where the legal remedies available to a plaintiff are inadequate or incomplete. *See Home Shopping Club. Inc. v. Roberts Broad. Co.,* 989 S.W.2d 174,

---

5. It is undisputed that after Smith failed to pay the fine associated with the Notice of Violation, she received a Final Notice on October 10, 2007. Although the Final Notice did provide Smith with a court date, Smith was given a court date scheduled for March 23, 2007—nearly six months before the alleged violation occurred.

180 (Mo.App. E.D.1998). Plaintiffs are not entitled to seek and receive equitable relief unless the facts pleaded in the petition show they lack an adequate remedy at law. *State ex rel. Janus v. Ferriss,* 344 S.W.2d 656, 659 (Mo.App. St.L.1961). The failure to plead and prove the lack of an adequate remedy at law is a defect that may be raised at any stage of the proceedings; or even by the court itself. *See Ford v. Director of Revenue,* 11 S.W.3d 106, 110 (Mo. App. S.D.2000) (*overruled on other grounds by Baldwin v. Director of Revenue,* 38 S.W.3d 401 (Mo. banc 2001)).

> [T]he mere invalidity of a municipal ordinance is not alone sufficient ground for enjoining its enforcement. Ordinarily the one asserting such a claim would have an adequate remedy at law by establishing the invalidity of the ordinance as a defense to the proceeding brought against him for its violation. To warrant the intervention of a court of equity, there must be a showing of something in addition to the claim of invalidity which serves to bring the case within one or more of the recognized grounds of equitable jurisdiction. It must appear, for instance, that the enforcement of the ordinance would deprive the complaining party of his property rights without adequate redress by legal remedy, or that injunctive relief is required to prevent a multiplicity of actions or proceedings for violation of the ordinance.

*Bhd. of Stationary Engineers v. City of St. Louis,* 212 S.W.2d 454, 458 (Mo.App. St.L. 1948).

In the Third Amended Petition, Respondents alleged Morgan lacked an adequate remedy at law, despite her pending municipal court hearing. Specifically, Respondents claimed that they were precluded from challenging the constitutionality of the Ordinance in municipal court because the Ordinance enumerates only two affirmative defenses available to the accused—identifying the appropriate driver or providing information that the car was stolen at the time of the violation.

Included in the summary judgment evidence before us is an affidavit from the municipal court clerk stating that Morgan may still schedule a court date for her violation and assert whatever · defenses she chooses. The affidavit further states that the municipal court has no rules or procedures limiting the ability of red light camera defendants to raise constitutional defenses in that court. City additionally offered an affidavit from Sharon Stone ("Stone"), an assistant city counselor who was formerly lead prosecutor for the automated traffic enforcement daily docket in municipal court. Stone was responsible for prosecuting thousands of cases involving Notices of Violations issued pursuant to the red light camera system. In her affidavit, Stone stated that individuals charged with violating the Ordinance were always permitted to raise constitutional defenses at the municipal court level. Stone also noted her participation in multiple oral arguments in municipal court regarding constitutional challenges to the red light camera system. In cases where the constitutional defenses were unsuccessful, some parties exercised their right to trial *de novo* on appeal. We further note that Respondents have provided no judicial authority to suggest that, as a matter of law, they are precluded from attacking the constitutionality of an ordinance in municipal court.

In reviewing the summary judgment evidence before us, we hold that Morgan has an adequate remedy at law in her municipal court hearing, which is the forum in which she must raise all of her claims. Because Morgan has an adequate legal remedy, she is not entitled to judgment as

a matter of law in the equitable claim before us. We therefore reverse the judgment of the trial court granting summary judgment in favor of Morgan on the due process claims set forth in Count I. Morgan is able to pursue her due process challenge to the Ordinance in municipal court.

### C. Procedural Due Process

■ City's final and only substantive challenge to the trial court's ruling that City's procedures for processing red light camera violations infringes procedural due process is that the Final Notice sent by City provided the required notice of the court dates, times, and locations in the event either Respondent wished to contest the violations. City avers that the Final Notice cured any due process deficiencies of the initial Notice of Violation. City contends the undisputed facts show that, upon receipt of the Final Notice, both Respondents were aware of their right to appear in court, received notifications of their scheduled court appearances, and made informed decisions not to appear in court.[6] Because we have determined Morgan must raise this issue at her municipal court hearing, we address this issue solely with regard to Smith.

In its Final Judgment, the trial court concluded the Ordinance violates procedural due process because no summons or court date is provided with the Notice of Violation. Rather, a court date is provided only with the Final Notice, and is not sent to the vehicle owner until after the due date for paying the fine has passed. The trial court also found that the Notice did not inform the recipient of the right to contest the violation, except in cases where the affidavit of non-responsibility applies. As a result, the trial court found that

City's enforcement of the Ordinance violates procedural due process.

Having reviewed the facts presented in the record before us on Smith's procedural due process claim, we find the Missouri Supreme Court rules dispositive. Despite City's general claim that the Final Notice informed Smith of her right to appear in court and her scheduled court appearance, the uncontroverted facts before us indicate that Smith was not given notice of a meaningful court date because the court date given to her in the Final Notice sent by City was a date that had already passed. Although City argues that the combined references to court proceedings in both the Notice of Violation and Final Notice provide Smith the notice required by due process, it is clear that City's enforcement of the Ordinance does not provide the process and notice mandated by the Missouri Supreme Court rules for traffic offenders in this state.

Article V of the Missouri Constitution grants the Missouri Supreme Court the power to "establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law." Mo. Const. art. V, Section 5. The rules govern all legal matters and supersede all statutes and ordinances inconsistent therewith, subject only to the limitations of federal law and the Missouri Constitution. *Id.; Swofford v. State*, 323 S.W.3d 60, 63 (Mo. App. E.D.2010). The Supreme Court rules implement a remedy for a violation of a right, promote the orderly administration of justice, provide a pattern of regularity of procedure within the court, and facilitate the effective flow of information. *Swofford*, 323 S.W.3d at 63. The rules are binding on courts, litigants, and counsel, and it is this Court's duty to enforce them,

---

**6.** City makes this claim despite the fact that the Final Notice sent to Smith included a

court date that was scheduled for six months before her violation occurred.

"even if no party objects, because parties cannot waive compliance with court rules." *Id.*

Consistent with its powers under Article V, the Missouri Supreme Court has developed rules relating to municipal ordinances and the procedures that apply to prosecutions for violations of such ordinances. *See* Rule 37 and Rule 38. Though constitutional charter cities may legislate for themselves as long as they do so consistently with state statute, "that does not mean that suits by such cities in the courts of this state are not subject to rules of practice and procedure promulgated by the Supreme Court under the rule making power conferred on it by Article V, Section 5 [of the] Constitution of Missouri." *Bueche v. Kansas City,* 492 S.W.2d 835, 842 (Mo. banc 1973).

To determine whether City's enforcement of the Ordinance complies with the Supreme Court rules, we again turn to Rule 37.33, which governs the required contents of a notice issued for violation of a municipal ordinance. The rule, titled "Violation Notice—Contents," states:

(a) A violation notice shall be in writing and shall:

(1) State the name and address of the court;

(2) State the name of the prosecuting county or municipality;

(3) State the name of the accused or, if not known, designate the accused by any name or description by which the accused can be identified with reasonable certainty;

(4) State the date and place of the ordinance violation as definitely as can be done;

(5) State the facts that support a finding of probable cause to believe the ordinance violation was committed and that the accused committed it;

(6) State that the facts contained therein are true;

(7) Be signed and on a form bearing notice that false statements made therein are punishable by law;

(8) Cite the chapter and section of the ordinance alleged to have been violated and the chapter and section that fixes the penalty or punishment; and

(9) State other legal penalties prescribed by law may be imposed for failure to appear and dispose of the violation.

(b) When a violation has been designated by the court to be within the authority of a violation bureau pursuant to Rule 37.49, the accused shall also be provided the following information:

(1) The specified fine and costs for the violation; and

(2) That a person must respond to the violation notice by:

(A) Paying the specified fine and court costs; or

(B) Pleading not guilty and appearing at trial.

(c) The violation notice shall be substantially in the form of the Uniform Citation set out in Form 37.A, with such additions as may be necessary to adapt the Uniform Citation to the jurisdiction involved.

Rule 37.33. Additionally, Rule 38.07 addresses the contents of notices for violations of ordinances handled through municipal violation bureaus. Rule 38.07(a)(9) specifically requires that the Notice of Violation state that a person must respond to the notice of violation by paying the fine or pleading not guilty and appearing at trial. Rule 38.07(a)(9).

The Missouri Supreme Court interprets the rules by applying principles similar to those used for state statutes and determines the intent by considering the plain

and ordinary meaning of the words in the rule. *State ex rel. Vee–Jay Contracting Co. v. Neill,* 89 S.W.3d 470, 471–72 (Mo. banc 2002). "The term 'shall' is mandatory." *Id.* Therefore, Rules 37.33(b)(2) and 38.07(a)(9) mandate that when a violation falls under the authority of a violation bureau—as City assures us and the record indicates is the case here—City is required to inform individuals who receive a Notice of Violation that they must respond to the violation notice by *either* paying the fine *or* pleading not guilty and appearing at trial.

City's Notice of Violation does not include the mandatory language, and, therefore, fails to provide the recipient with a choice—plead guilty and pay the fine or plead not guilty and challenge the violation in municipal court. Although City argues that the Notice of Violation contains at least three references to court dates or proceedings, the language to which City refers does not actually inform a ticket recipient of his or her right to plead not guilty and have a trial. Rather, the Notice of Violation merely warns the individual that the recorded images of the person's vehicle "will be submitted as evidence in the municipal court proceeding" and if "you fail to appear in court on your court date, further legal action may be taken against you." No court date is provided, nor is there any information on how to obtain a court date to contest the fine. As such, City's enforcement of its Ordinance is invalid due to its failure to comply with Rules 37.33 and 38.07.

Despite the inadequacy of the Notice of Violation, City argues that the Final Notice sent to Smith provided her sufficient notice of the court dates, times, and locations in the event she wished to contest the violation notice. City's bootstrapping proposition fails because City cannot cure its faulty Notice of Violation with a second notice that is not authorized by the Missouri Supreme Court rules. Neither Rules 37.33 or 38.07, nor any other provision of Rules 37 or 38 contemplate the filing of a second or amended violation notice that provides the mandatory information lacking from the first notice. Similarly, we find no authority allowing City to divide the requirements of Rules 37.33 and 38.07 into separate documents mailed more than a month apart. In the interest of judicial efficiency and the effective flow of information, two of the main purposes behind the rules, *Swofford,* 323 S.W.3d at 63, an accused must be provided with the totality of the information required by the rules when he or she receives a Notice of Violation.

■ Missouri's Rules of Civil Procedure support this finding. Because prosecutions by municipalities for the violation of a municipal ordinance are civil proceedings with quasi-criminal aspects, *State ex rel. Kansas City v. Meyers,* 513 S.W.2d 414, 416 (Mo. banc 1974), the sufficiency of the municipal complaint or information is to be determined by the same rules that are applicable in other civil actions. *City of St. Louis v. Flynn,* 386 S.W.2d 44, 48 (Mo.1965). In a civil action, "[t]he purpose of pleadings is to present, define, and isolate the issues, so that the trial court and all parties have notice of the issues" at the outset of the litigation. *Kavanaugh v. Ealy,* 364 S.W.3d 759, 762 (Mo.App. E.D. 2012) (*quoting K.O. Real Estate, LLC v. O'Toole,* 291 S.W.3d 780, 789 (Mo.App. E.D.2009)). A party who substantively amends a pleading by adding a new count files a completely new pleading rather than filing a pleading which contains only the supplemental information. Once a pleading has been amended, all prior pleadings are considered abandoned unless they are incorporated into the amended pleading. *Danforth v. Danforth,* 663 S.W.2d 288, 294 (Mo.App. W.D.1983).

Similarly, the purpose behind a Notice of Violation is to inform the accused of the essential facts constituting the offense charged while keeping in mind the traditional rights of the accused and the orderly administration of justice. *See City of Elvins v. De Priest* 398 S.W.2d 22, 24 (Mo. App. St.L.1965). City's Notice of Violation is analogous to a petition in that both institute proceedings against a party. City is without authority to supplement its Notice of Violation with additional information provided in a subsequent Final Notice, but rather is required to provide all of the information contemplated by Rule 37.33 at the outset of the proceeding.

Even if we treated the Final Notice as an "amended" Notice of Violation, the Final Notice remains deficient under the Supreme Court rules. Along with its failure to alert the accused to his or her right to plead not guilty and appear at trial, the Final Notice does not contain a probable cause statement. Moreover, while the Final Notice does contain a court date, there is no indication that the ticket recipient may actually *plead not guilty and challenge* his or her violation at that court hearing. The Final Notice states, "You have failed to respond in a timely manner to the Notice of Violation listed above, issued to the vehicle registered in your name. You must appear at the St. Louis City Court, 1430 Olive, St. Louis, MO on . . . ." Such a command strikes this court more as a summons as defined under Rule 37.42 and not an opportunity to challenge the violation. In fact, the Final Notice admonishes ticket holders that it is in their "best interest to pay this [fine] immediately."

As the political and public debate as to the desirability of automated traffic enforcement continues, it is not lost on this Court that the notices mailed by City to vehicle owners produce the exact results desired by City, i.e., payment of fines by vehicle owners without resort to legal proceedings or challenge. The Ordinance as currently enforced is designed to intimidate vehicle owners into paying the fine without challenging their violation, while simultaneously obscuring and undermining their right to do so. City's Notice of Violation is deficient under Rule 37.33, and we are not persuaded that the Final Notice cures this deficiency. Accordingly, the Ordinance is invalid as applied. Any other holding would allow City to continue to mail deficient violation notices that pressure alleged violators to pay the fine and relinquish their right to challenge the violation in a court of law before City supplements the deficient notice with a Final Notice containing a court date. Allowing City to continue this practice would render meaningless the purpose behind the Supreme Court rules. Therefore, we affirm the trial court's grant of summary judgment to Respondents on Count I on the grounds that City's enforcement of the Ordinance violates the Missouri Supreme Court rules and is invalid.

## II. Smith is not entitled to a refund of the fine she voluntarily paid.

■ In her first point on cross-appeal, Smith argues the trial court erred in granting summary judgment in favor of City on her claims for unjust enrichment and money had and received. Smith contends that the facts taken in the light most favorable to her clearly demonstrate that she made a submissible case on each claim, and that City did not prove its affirmative defense of voluntary payment. Smith therefore reasons that she was entitled to restitution for the fine she paid. Despite our holding that the Ordinance is invalid as applied, Smith is not entitled to obtain restitution from City under Missouri law because she voluntarily paid the fine.

In its Partial Judgment, the trial court found that City was entitled to partial summary judgment as to Smith's claim for damages.[7] Quoting *Ring v. Metropolitan St. Louis Sewer District*, 969 S.W.2d 716, 718 (Mo. banc 1998), the trial court ruled against Smith on the damage claims because a "sovereign need not refund taxes voluntarily paid, but illegally collected." Thus, for Smith to succeed on her claim there must be evidence that she paid the fine involuntarily. Finding that the uncontroverted facts show that Smith did not pay her fine involuntarily or under protest, the trial court held Smith could not seek a refund from City of the fine she paid. In its Final Judgment, the trial court further held that because causes of action sounding in both unjust enrichment and money had and received seek a refund of money paid by the plaintiff to the defendant, and because the trial court already determined Smith was not entitled to a refund of the fine already paid, Counts IV and V must fail as a matter of law. City was granted summary judgment on Counts VI and V. Smith now appeals that determination.

■■■■ To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable or unjust circumstances. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo.App. W.D.2010). Even if a benefit is "conferred" and "appreciated," if the plaintiff suffers no injustice as a result of the defendant's retention of the benefit, then the plaintiff's claim for unjust enrichment will fail. *Id.* Unjust retention of

benefits only occurs when the benefits were conferred under a mistake of fact or under constraint. *Id.*

■■■■ Similarly, an action for money had and received lies when the defendant received money from the plaintiff under circumstances that in equity and good conscience call for defendant to return it to plaintiff. *Palo v. Stangler*, 943 S.W.2d 683, 685 (Mo.App. E.D.1997). In order for a plaintiff to make a submissible case for money had and received, he or she must establish that the defendant received or obtained possession of the plaintiff's money, the defendant thereby appreciated a benefit, and the defendant's acceptance and retention of the money was unjust. *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. App. E.D.2008).

■■■■ Missouri law recognizes the voluntary payment doctrine as a defense to claims for unjust enrichment and money had and received. *Huch v. Charter Commc'n, Inc.*, 290 S.W.3d 721, 726 (Mo. banc 2009). Under the voluntary payment doctrine, a person who voluntarily pays money with knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover the payment, even if the money is paid without sufficient consideration and under protest. *Id.* Missouri courts have consistently recognized that money voluntarily paid to another under a claim of right to the payment, and with knowledge of the facts by the person making the payment, is not recoverable on the ground that the claim was illegal or that there was no liability to pay in the first instance. *Am. Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 811–12 (Mo.App. K.C.1969). This principle applies even

---

**7.** In its February 17, 2012 Order and Amended Final Judgment, the trial court clarified that by "damages" it was only referring to Smith's ability to receive a refund for the $100 fine. Smith's request for compensatory and punitive damages, interest, and attorneys' fees was not precluded by the trial court's finding that she was barred from obtaining a refund of the fine she paid.

though the payor makes the payment under the false impression that the demand was legal. *Id.* at 812. Restitution will be granted when payment is made under mistake of fact but not mistake of law. *Pitman v. City of Columbia*, 309 S.W.3d 395, 404 (Mo.App. W.D.2010). "[W]here money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made ... under a mistake of law." *Id.* (quoting *Am. Motorists Ins. Co.*, 447 S.W.2d at 811). "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Id.*

Smith says she only paid the fine because of her mistaken belief that she would be arrested for non-payment. Even accepting her statement as true for purposes of our summary judgment analysis, we find no error in the trial court's judgment because Smith's payment of the fine resulted from her mistaken belief as to validity and enforceability of the Ordinance. While Smith characterizes her mistaken belief as one of fact, we find this argument is unavailing because the validity and enforceability of the Ordinance as presented in this case is an issue of law, not fact. Because Smith's belief as to the validity of the Ordinance is a mistake of law, the trial court correctly applied the voluntary payment doctrine to Smith's claims. Because the voluntary doctrine applies, Smith will be entitled to restitution of the fine only if she paid the fine under duress.[8]

To rise to the level of "duress" necessary to preclude enforcement of the voluntary payment doctrine, a payment must be made under "circumstances of oppression, where an unlawful demand was paid to avoid a greater loss, and either

under protest or under circumstances amounting to compulsion." *Ferguson v. Butler County*, 297 Mo. 20, 247 S.W. 795, 796 (1923). Missouri does not recognize the threat of legal process as duress because the party threatened with legal process is entitled to plead and prove that he is not liable. *Sch. Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Com'rs*, 384 S.W.3d 238, 275 (Mo.App. W.D.2012). Furthermore, "conduct cannot constitute duress unless it is wrongful; it is not duress to do, or to threaten to do, what one has a right to do." *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 371 (Mo.App. W.D.1996); *see also Lett v. City of St. Louis*, 948 S.W.2d 614, 620 (Mo.App. E.D. 1996) (finding argument of taxpayers that potential civil and criminal penalties for failing to pay tax constituted duress to be without merit because "[a]ny taxpayer paying any kind of tax, legal or illegal, faces the possibility of civil or criminal penalties for withholding payment").

Here, Smith was not subjected to the duress as recognized by Missouri courts that would render her payment of the fine involuntary. Respondents rely heavily on the fact that Smith paid the fine out of her fear that City would follow up on its threat of "further legal action" if she did not pay. As understandable and reasonable as her reaction was to such statements, Missouri law categorically rejects the notion that the threat of legal action constitutes duress. *Sch. Dist. of Kansas City, Missouri*, 384 S.W.3d at 275. At the time of Smith's alleged violations, City was entitled to pursue legal action against Smith and to issue an arrest warrant should she not appear, even though the Ordinance later may be deemed invalid. *See* Rules 37.42, 37.44; *see also Cmty. Fed. Sav. & Loan Ass'n v. Dir. of Revenue*, 752 S.W.2d 794, 797 (Mo.

---

8. Respondents do not allege the occurrence of fraud.

banc 1988) ("Governments are entitled to presume that statutes are constitutional.").

Moreover, the summary judgment evidence before us clearly shows that Smith voluntarily paid the fine. Smith admitted in her deposition that she was not worried about being arrested until she forgot to pay the fine in response to the Notice of Violation and later received the Final Notice. Although the court date provided by City in the Final Notice was seven months in the past, the evidence is uncontroverted that Smith considered calling to request a new court date, but, like the many vehicle owners who have received Notices of Violations from City since the inception of the automated red light enforcement, she "decided just to pay the violation and move on." While Smith's decision to pay the fine very well may have amounted to surrendering to the bureaucracy of municipal government, her testimony supports but one finding: that her decision to pay the fine was voluntary. Because the trial court properly applied the voluntary payment doctrine as recognized under Missouri law in its grant of summary judgment to City on Smith's claims for damages, Smith's first point on cross-appeal is denied.

## III. The trial court erred in granting summary judgment to Respondents on Count VII of their Third Amended Petition.

We now address City's first point on appeal, which presents two distinct issues. City initially argues the trial court erred in granting summary judgment in favor of Respondents on Count VII of their Third Amended Petition because Respondents' motion for summary judgment presented a claim and legal theories not pleaded in Respondents' Second Amended Petition. City next argues the trial court erred by granting Respondents summary judgment on a claim Respondents did not raise in their motion for summary judgment, i.e., that City lacked authority to enact the Ordinance absent State enabling legislation. Finally, City asserts that even if the issue of its authority were properly before the trial court, summary judgment was improper because the Missouri Constitution affords charter cities all power the legislature is authorized to grant without need for an enabling statute, and Section 304.120.2(1) grants such authority in any event. We will address each argument in turn.

A. *Respondents' claim that the Ordinance conflicted with state law was adequately raised in the amended petition and was the proper subject for summary judgment.*

■■■ Our first task in analyzing City's challenge to the entry of summary judgment on Count VII is a procedural matter, i.e., did the trial court grant judgment on grounds not properly raised in the pleadings. The multiple pleadings and motions filed in this case require a careful review. Having fully engaged in that review, we are not persuaded that the trial court erroneously acted outside the scope of the pleadings when entering summary judgment on Count VII.

On March 29, 2010, Respondents filed a Second Amended Petition presenting six separate counts, including claims for violation of Article I, Sections 10, 18(a), and 19 of the Missouri Constitution, unjust enrichment, money had and received, and a request for permanent injunction. While the Second Amended Petition did not contain a separate enumerated count alleging the Ordinance conflicted with Missouri state law, the Second Amended Petition contained several averments throughout that the Ordinance circumvented and conflicted with Missouri state law. In particular, the Second Amended Petition alleged: 1) that

the violation of a traffic signal under Sections 304.281 and 558.011 is a class C misdemeanor punishable by a term not to exceed 15 days' imprisonment, whereas the Ordinance authorizes up to 90 days' confinement; 2) that Section 302.010(12) defines moving violations as a violation that requires the vehicle to be in motion at the time of the violation, yet the Ordinance circumvents Missouri law by classifying red light violations as non-moving violations; and 3) that such classification as a non-moving violation circumvents Section 302.302, which requires the assessment of two points for moving violations, and Section 302.225, which requires the reporting of any person convicted of a moving violation to the Missouri Department of Revenue.

On August 24, 2010, Respondents each filed a motion for partial summary judgment based upon constitutional issues and the Ordinance's conflict with state statute. Respondents' motions alleged that the Ordinance was in conflict with state law in three specific instances, and was therefore void. First, Respondents alleged the Ordinance classified violations of traffic signals as non-moving violations, which conflicts with Section 302.010(12). Respondents next alleged that the Ordinance classified a violation as an infraction, when Section 304.281 classifies such violations as misdemeanors. Lastly, Respondents argued the Ordinance circumvents and conflicts with Sections 302.302 and 302.225, which require the assessment of two points for moving violations.

On September 16, 2010, City filed a motion seeking to strike Respondents' summary judgment pleadings because the motions for summary judgment requested judgment on a claim that Respondents had not pleaded in their petition. Specifically, City claimed that Respondents did not address the Ordinance's alleged conflicts with state law in a separate count, thereby denying City the opportunity to plead or prove a defense against such a claim. The trial court did not rule on City's motion to strike, but granted Respondents leave to file an amended petition setting forth statutory grounds for injunctive relief. The trial court also gave City an extension of time for filing its responses to Respondents' motions for summary judgment.

On September 21, 2010, Respondents filed a Third Amended Petition, which now included Count VII—Ordinance Conflict with State Statute. Count VII reasserted the various averments, previously set forth in the Second Amended Petition, that the Ordinance conflicted with Missouri state law. Respondents did not renew or re-file their motions for partial summary judgment previously filed and pending under the Second Amended Petition after the filing of their Third Amended Petition. On October 1, 2010, City answered Respondents' Third Amended Petition, denying the allegations in Count VII. On October 26, 2010, City filed its memorandum in opposition to Respondents' motions for summary judgment, in which City addressed Respondents' argument that the Ordinance was in conflict with Missouri state law, and therefore void.

City argues that the trial court should have been procedurally precluded from entering summary judgment because Respondents amended their petition to assert a new claim after they filed summary judgment motions, and they did not renew their summary judgment motions after the filing of the Third Amended Petition. City claims the trial court could only review the summary judgment motion under the petition at issue at the time Respondents filed their summary judgment motions. City contends the trial court erred in considering Respondents' motions for summary judgment, which requested judgment on a

claim not pleaded in the Second Amended Petition. Because Rule 74.04 allows a party to recover only upon a claim, counterclaim, or cross-claim or to obtain declaratory judgment, City contends there was no "claim" before the trial court, thereby rendering the grant of summary judgment inappropriate. We reject City's rigid interpretation of Rule 74.04.

Rule 55.33(a) governs amendments of pleadings and directs trial courts to liberally allow amendments when justice so requires. Rule 55.33(a). The purpose of Rule 55.33(a) is to allow matters to be presented that were overlooked or unknown to the party when the first pleading was filed. *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 701 (Mo. banc 2008). The trial court has broad discretion to grant leave to amend pleadings, and this Court will not disturb its decision unless the trial court obviously and palpably abused its discretion. *Id.*

Moreover, when determining a plaintiff's theory of recovery we look to the substance of the factual allegations in the petition, along with the relief sought, rather than the form of the petition. *Macke Laundry Service Ltd. Partnership v. Jetz Service Co., Inc.*, 931 S.W.2d 166, 179 (Mo. App. W.D.1996); *Alarcon v. Dickerson*, 719 S.W.2d 458, 461 (Mo.App. W.D.1986); *see also* Section 509.050. In *Macke*, the court determined that the facts alleged in the petition were sufficient to state a claim for malicious prosecution, despite the petition's failure to expressly include a separate count alleging malicious prosecution. *Macke*, 931 S.W.2d at 179. Here, our review of the record confirms Respondents' contentions that they sufficiently alleged in the Second Amended Petition that the Ordinance circumvented and conflicted with Missouri state law. While the various allegations are not contained within a single separate count, a plain reading of the Sec-

ond Amended Petition readily brings these allegations to light. Even if we were to hold that Respondents' summary judgment motions applied only to the claims raised by the Respondents in the Second Amended Petition, we find that Respondents adequately alleged facts to support a claim that the Ordinance conflicts with Missouri state law.

Furthermore, even if Respondents' motions for summary judgment were not properly before the court, "[w]hen the issues and the documents in support of the motion are clear to the litigants, the trial court, and the appellate court, the failure to comply with Rule 74.04 does not per se preclude the granting of summary judgment nor the affirming of such a judgment." *Premier Golf Missouri, LLC v. Staley Land Co., LLC*, 282 S.W.3d 866, 872 (Mo.App. W.D.2009) (*quoting Gillespie v. Estate of McPherson*, 159 S.W.3d 466, 470 (Mo.App. E.D.2005)). Where the parties understand the issues, the material facts are not disputed, and the question posed is one of law, procedural deficiencies will not preclude the court from addressing a motion for summary judgment on the merits. *Id.* Here, the issues were clear to all parties, which is evidenced by City's response to Respondents' conflict with state law claim in both its answer to the Third Amended Petition and its memorandum in opposition to Respondents' motion for summary judgment. As a result, we are unwilling to hold the trial court procedurally erred in granting summary judgment in favor of Respondents on their conflict with state law claim.

### B. *Authority to Enact the Ordinance*

City next claims that the trial court erred in granting summary judgment in favor of Respondents on Count VII because the trial court reached an independent conclusion on an argument not asserted by Respondents in their summary

judgment motions, i.e., that City lacked authority to enact the Ordinance absent State enabling legislation. City reasons that it could not anticipate the trial court might render judgment on this basis, and was therefore deprived of its right to present facts and legal argument in opposition. City further argues that even if the issue of City's authority were properly before the trial court, the trial court erred in granting summary judgment because City possessed authority to enact the Ordinance. Because we agree that the trial court erred in finding City lacked authority to enact the Ordinance, we do not reach the initial procedural argument presented in this point on appeal.

When granting its Partial Judgment, the trial court expressly held that the Ordinance did not directly conflict with the state statutes cited by Respondents. However, the trial court nevertheless invalidated the Ordinance by finding City lacked the authority to enact it. In so holding, the trial court relied on *Richmond Heights v. Shackelford*, which holds that a municipal corporation possesses and can exercise only powers granted in express terms, powers implied or incident to the powers expressly granted, and those powers essential to the objectives and purposes of the corporation. *See Richmond Heights v. Shackelford*, 446 S.W.2d 179, 180 (Mo.App. St.L.1969). The trial court found that although Section 304.120 grants municipalities the power to make additional rules of the road or traffic regulations to meet their needs and traffic conditions, the Ordinance at hand performs neither function because it merely authorizes the use of an automated system to police violations of already existing traffic control ordinances. The trial court also briefly dis-

cussed the City's police power, citing *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust* for the proposition that a municipality may only exercise its police powers under authority granted to it by the state. *See Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 117 (Mo. banc 2010) (citing *Shackelford*, 446 S.W.2d at 180).[9] The trial court determined that the use of an automated traffic control system is a "drastic departure from the traditional police powers granted to municipalities." Finding that the Ordinance did not enact additional rules of the road or traffic, regulations, the trial court held that City lacked authority to enact the Ordinance absent other enabling legislation by the State of Missouri, and declared the Ordinance void.

City filed a motion for reconsideration, requesting the trial court reevaluate its holding with regard to City's authority to enact the Ordinance, and arguing that the trial court's finding was incorrect as a matter of law. The trial court denied the motion for reconsideration in its Final Judgment, again noting that a city has only that police power conferred by the state, and further emphasizing that even when the state delegates police power, a city's exercise of that power must conform to the terms of the statutory grant. The trial court further explained that an ordinance is only a legitimate exercise of police power when the ordinance has a substantial and rational relation to the health, safety, peace, comfort, and general welfare of the citizens of the municipality. The trial court concluded that the Ordinance did not conform to the statutory grant under Section 304.120 because it did not regulate and control the streets or traffic, and that it lacked a substantial and ration-

---

9. Although that proposition is true, it should be noted that the city at issue in *Orla Holman Cemetery* was an incorporated village with only two property owners, not a constitutional charter city like St. Louis.

al relation to the health, safety, and welfare of the inhabitants of St. Louis. Therefore, the trial court reiterated its prior holding that absent specific enabling legislation from the legislature, the Ordinance was void.

We reverse the trial court's judgment as to Count VII on two grounds.

1. *City's Authority Under its Police Power*

City's enactment and implementation of an automated traffic control system is not so tangential and unrelated to the legitimate function and goal of traffic regulation so as to fall outside of City's police power. It is undisputed that a city has no inherent police power. Rather, a city's authority to exercise police power must come from a specific delegation by the state. *Clifford Hindman Real Estate, Inc. v. City of Jennings*, 283 S.W.3d 804, 809 (Mo.App. E.D.2009); *Engelage v. City of Warrenton*, 378 S.W.3d 410, 414 (Mo. App. E.D.2012). With regard to traffic control, the State of Missouri has granted municipalities the authority to exercise its police power in making "additional rules of the road or traffic regulations to meet their needs and traffic conditions" as long as the ordinance's provisions are consistent with and do not conflict with state law.[10] Section 304.120.2; Section 304.120.3; *City of Creve Coeur v. Nottebrok*, 356 S.W.3d 252, 261 (Mo.App. E.D.2011).

A municipality's police power is not unlimited. Even though a municipality may enact an ordinance pursuant to its police power, the ordinance must still have a rational relationship to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality. *See Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 229 (Mo.App. E.D.1997). "If reasonable minds might differ as to whether an ordinance has a substantial relationship to the health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance." *Id.*

In Missouri, courts have held that City's reasonable regulation of traffic is a valid exercise of the state's police power. *City of St. Louis v. Cook*, 359 Mo. 270, 221 S.W.2d 468, 469 (1949); *see also State ex rel. Schmitz v. City of St. Louis*, 551 S.W.2d 848, 851 (Mo.App. St.L.1977) (*quoting Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355, 363(9) (Mo. 1960) ("[T]he City of St. Louis has full police power to regulate and control all traffic on its streets.")). We disagree with the trial court's finding that the Ordinance does not act to regulate and control the streets or traffic. Not only does the introduction to the Ordinance state that it is an "ordinance relating to traffic control," but the Ordinance authorizes prosecution of vehicle owners for violations of City's traffic ordinances through the use of an automated enforcement system. We fail to see how the Ordinance is not an exercise of control over traffic on City streets.

Furthermore, we are unwilling to hold the Ordinance lacks any substantial and rational relation to the health, safety, peace, comfort, and general welfare of the inhabitants of St. Louis. Section Three of the Ordinance directs the installation of red light cameras "at intersections or other locations identified by the police department as dangerous due to numerous traffic control ordinance violations." Reducing the dangerousness of intersections by targeting vehicles that violate existing traffic regulations is rationally and substantially related to the health, safety, peace, comfort, and general welfare of the inhabitants of St. Louis, and is a valid exercise of

---

10. In its ruling, the trial court found no conflict between City's Ordinance and state law.

City's police power. *See Nottebrok,* 356 S.W.3d at 259 (finding that Creve Coeur's automated photo traffic enforcement program was enacted pursuant to the city's police power for regulating public safety).

*2. As a constitutional charter city, City is authorized to enact ordinances without specific enabling legislation.*

■■■ In addition to the authority granted to City to enact traffic-related ordinances under its police power, City also possesses the authority to enact ordinances without express enabling legislation. Prior to the adoption of Article 6, Section 19(a) of the Missouri Constitution, Missouri courts were compelled to find an express grant of authority in the constitution, statutes, or city charter. *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 210 (Mo. banc 1986). In 1971, however, Section 19(a) was adopted, which states:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

Mo. Const. art. VI, Section 19(a).

Section 19(a) grants to a constitutional charter city all power that the legislature is authorized to grant. *State ex inf. Hannah ex rel. Christ v. City of St. Charles,* 676 S.W.2d 508, 512 (Mo. banc 1984).

"Under Missouri's new model of home rule, even in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself." *Id.* Because City's power is derived from Section 19(a), the question we consider is no longer whether a charter city has the authority to exercise the power involved, but whether the exercise of that power conflicts with the Missouri Constitution, state statutes, or the city's charter. *See Cape Motor Lodge, Inc.,* 706 S.W.2d at 211; *City of Kansas City v. Carlson,* 292 S.W.3d 368, 371 (Mo.App. W.D.2009); *see also* Section 71.010 (municipalities shall confine and restrict the passage of their ordinances to and in conformity with state law upon the same subject).

It is uncontroverted that the City of St. Louis is organized as a constitutional charter city under article VI, Section 19(a). As a constitutional charter city, City has all the power that the legislature could grant unless limited by the constitution, statutes, or its charter. As previously noted, the trial court found that the Ordinance does not conflict with state law. Respondents/Cross–Appellants do not appeal that finding.[11] As a constitutional charter city, City had the authority to enact the Ordinance.

Because the Ordinance is a valid exercise of City's police power under Section 304.120, and because City possesses authority as a constitutional charter city to enact the Ordinance, the trial court's grant of summary judgment to Respondents is reversed with respect to Count VII.

---

**11.** While we question the trial court's decision as to whether the Ordinance conflicts with Missouri statutes, neither party appeals that determination. Accordingly, we do not and cannot address that issue here.

## IV. This Court need not determine whether the Ordinance violates the privilege against self-incrimination.

In their second point on cross-appeal, Respondents assert that the trial court erred in granting summary judgment in favor of City on Count II, violation of the right against self-incrimination. Respondents suggest that City's enforcement of the Ordinance requires the owner of a vehicle to testify against himself or herself in order to challenge a Notice of Violation, thereby violating the owner's constitutional right against self-incrimination. As noted above, we have already determined that the Notice of Violation must inform the ticket recipient of his or her option to plead not guilty and appear at trial. City's failure to do so rendered the enforcement of its Ordinance invalid as applied. Because this determination also is dispositive of Smith's claim that the Ordinance violates her privilege against self-incrimination, we need not address this issue on appeal.

### Conclusion

We are not blind to the criticism that municipalities use automated red light enforcement systems to generate substantial revenue to fund their municipal operations. Indeed, a common sense understanding of the implementation of the automated system strongly suggests cities employing automated red light cameras within their municipal boundaries may have discovered the elusive goose that lays the golden egg. However, by analogy, is the automated red light enforcement system fundamentally different from radar guns used by law enforcement, which when first introduced, represented a significant technological advance that aided law enforcement and municipalities enforce existing traffic regulations? It seems logical that the use of radar similarly may have resulted in increased revenues to municipalities due to more aggressive and accurate enforcement of existing traffic regulations made possible by new technology.

As disconcerting as it may seem, the financial windfall enjoyed by municipalities implementing the automated camera system does not diminish the benefits to public safety occasioned by any potential reduction in traffic accidents within their municipal boundaries. Nonetheless, municipalities are not free to ignore the notice requirements mandated by the Missouri Supreme Court when enforcing their red light camera ordinances. It is with these principles in mind that we find the Ordinance void for failure to comply with the Supreme Court rules and affirm the trial court's judgment in that respect. We reverse the judgment of the trial court with regard to Morgan's due process claims in Count I because she must bring her claims in municipal court, and we remand to the trial court with instructions to dismiss Morgan from this case. We also reverse the trial court as to its determination in Count VII that City lacked authority to enact the Ordinance absent state enabling legislation. Without reaching the issue of self-incrimination, we affirm the judgment of the trial court in all other respects.

CLIFFORD H. AHRENS, P.J., and LAWRENCE E. MOONEY, J., concur.