Molly EDWARDS, et al., Appellants,

v.

CITY OF ELLISVILLE, and American Traffic Solutions, Inc., Respondents.

No. ED 99389.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 5, 2013.

Application for Transfer to Supreme Court Denied Jan. 27, 2014.

Application for Transfer Denied April 29, 2014.

John G. Simon, Ryan A. Keane, The Simon Law Firm, PC, St. Louis, MO, for Appellants.

Peter J. Dunne, Robert T. Plunkert, Pitzer Snodgrass, P.C., St. Louis, MO, for Respondent, City of Ellisville.

Jane E. Dueker, Nicholas G. Frey, Stinson Morrison Hecker LLP, St. Louis, MO, for Respondent, American Traffic Solutions, Inc.

## Introduction

KURT S. ODENWALD, Judge.

Molly and Anthony Edwards ("Edwards"), Gregory and Amanda Bissell ("Bissells"), John and Sheila Annin ("Annins"), and Joseph and Salvatore Cusumano ("Cusumanos") (collectively "Appellants") appeal from the judgment of the trial court granting separate and joint motions to dismiss filed by Respondents City of Ellisville ("Ellisville") and American Traffic Solutions, Inc. ("ATS"). Appellants received violation notices from Ellisville alleging that they had violated Ellisville's red light camera ordinance ("the Ordinance") and challenged the Ordinance in an eight-count purported class action petition. The petition sought declaratory judgment regarding the Ordinance's constitutionality, validity, and conformity with state law, as well as Ellisville's authority to enact the Ordinance. Appellants also asserted that the Ordinance violated procedural due process and the privilege against self-incrimination, and they alleged claims of unjust enrichment, money had and received, and civil conspiracy against Ellisville and ATS.

Ellisville and ATS each filed separate motions to dismiss as well as a joint motion to dismiss, all of which were granted by the trial court. The trial court dismissed all of Appellants' claims with prejudice. The trial court did not provide an extended opinion, but rather adopted the conclusions of Respondents in their motions to dismiss. Appellants now appeal the trial court's judgment.

The Annins and Cusumanos have an adequate remedy at law available to them through their municipal court proceeding. Because they may raise their claims and defenses in their municipal court proceedings, we affirm the judgment of the trial court dismissing their claims.

The Edwards and Bissells have standing to challenge the validity of the Ordinance and whether the Ordinance conflicts with state law because they have been directly and adversely affected by the Ordinance. Therefore, we reverse the judgment of the trial court and its dismissal of Count I on the issue of standing. However, we nevertheless affirm the trial court's dismissal of the Edwards' and Bissells' constitutional due process claims because they waived whatever constitutional claims they may have had by not raising said claims at the municipal court proceeding. The Edwards

and Bissells are also estopped from raising their constitutional due process claims because they accepted their convictions and paid their corresponding fines in the municipal court proceeding. Because the Edwards and Bissells are precluded from now raising their constitutional claims due to waiver and estoppel, we do not address the substantive issues of whether the Ordinance violates procedural due process or whether sovereign immunity protects Ellisville from constitutional claims.

With regard to Ellisville's authority to enact the Ordinance, we reverse the trial court's judgment declaring that the Ordinance was properly enacted pursuant to Ellisville's police power for regulating public safety, and we reverse the trial court's dismissal of Count I in that respect. We normally would remand this matter to the trial court for discovery relating to the revenue-generation allegations set forth in the petition, but any remand is mooted by our holding that the Ordinance is void because it conflicts with state law.

We reverse the trial court's judgment dismissing Count I because the Ordinance conflicts with Missouri law on the same subject in violation of Section 304.120.3. Specifically, the Ordinance conflicts with Sections 304.281, 302.225, and 302.302. Accordingly, the Ordinance is void and unenforceable as a matter of law.

Despite our holding that the Ordinance is invalid, void, and unenforceable, the Edwards and Bissells are not entitled to restitution of the fines they paid under the Ordinance because the voluntary payment doctrine operates as a complete defense to actions for unjust enrichment and money had and received. Therefore, we affirm the trial court's dismissal of the Edwards' and Bissells' claims for unjust enrichment and money had and received.

*Factual and Procedural History*

Section 315.170 of the Ellisville Municipal Code authorizes the installation and use of red light cameras to detect "violations of public safety at intersections." A violation of public safety occurs when a motor vehicle is "present in an intersection" while the traffic control signal is emitting a steady red light for that direction of travel or when the vehicle fails to stop prior to making a right-hand turn. The Ordinance specifies that an infraction under the Ordinance "shall not be considered a moving violation reportable to the Missouri Department of Revenue."

The Ordinance places strict liability on the owner of any vehicle found to be in violation of the Ordinance, without regard to whether the owner was operating the vehicle at the time of the violation. If there is more than one owner of the vehicle, the Ordinance holds all owners jointly and severally liable for the violation. A violation may be excused if the owner submits a sufficient sworn statement providing proof that the vehicle's presence in the intersection was due to a justification enumerated in the Ordinance.

Upon review of the recorded images indicating a violation of the Ordinance, an Ellisville police officer completes a citation, which is mailed to the owner of the vehicle. The Ordinance provides that the citation shall direct the owner to respond by a specific date by paying the specified fine, providing an affidavit of non-liability sufficiently explaining why one of the enumerated justifications is applicable, or scheduling a hearing in municipal court. The Ordinance sets the fine for violation of the Ordinance at $100 and states that under no circumstances will a person be imprisoned for violating the Ordinance. If the owner pays the $100 fine, such payment is deemed a plea of guilty for the violation. If the owner requests a hearing in munici-

pal court, the matter is scheduled for arraignment and the owner will receive notice of the time and date of the hearing. The Ordinance further outlines specific procedures for prosecuting violations in municipal court.

The Notice of Violation provided to alleged violators states that an Ellisville police officer has probable cause to believe that the owner's vehicle violated the Ordinance by being present in the intersection when the controlling light was red. The owner is instructed to mail a check or money order payable to the City of Ellisville's Photo Enforcement Program in Cincinnati, Ohio. The return address on the Notice of Violation is a P.O. Box for the Ellisville Police Department's Photo Enforcement Program in Tempe, Arizona.

The reverse side of the Notice of Violation notifies the owner that "[i]t has been determined that your vehicle has proceeded into an intersection by crossing the stop line when the traffic control signal, for the direction in which your vehicle was traveling, was emitting a steady red signal. Red light running damages the public by endangering vehicle operators and pedestrians alike." The Notice of Violation informs recipients that failure to pay the fine by the due date will result in a Notice to Appear in court. The notice also includes a section titled **"COURT HEARING:** If you wish to dispute this Notice of Violation do not send payment, you will receive a Notice to Appear in the mail." If the recipient feels he or she received the Notice of Violation in error, he or she may send supporting documents and a copy of the notice to the City of Ellisville's P.O. Box in Tempe, Arizona, where the "prosecutor will review your case and you will be notified in writing of the outcome."

The Edwards and Bissells received violation notices for allegedly violating the Ordinance, and subsequently paid the $100 fine. The Annins and Cusumanos also received violation notices, did not pay the $100 fine, and have outstanding citations. In April 2012, Appellants filed an amended class action petition challenging the Ordinance on several grounds. In the petition, the Edwards and Bissells sought to represent a subclass of plaintiffs who received a Notice of Violation pursuant to the Ordinance and paid the fine. The Annins and the Cusumanos sought to represent a subclass of plaintiffs who received a Notice of Violation, did not pay the fine, and have at least one outstanding citation.[1]

The petition alleged eight counts: declaratory judgment (Count I); unjust enrichment against Ellisville on behalf of the Edwards and Bissells (Count II); money had and received against Ellisville on behalf of the Edwards and Bissells (Count III); violation of the self-incrimination clause of Article I, Section 19 of the Missouri Constitution against Ellisville (Count IV); violation of the due process clause of Article I, Section 10 of the Missouri Constitution against Ellisville (Count V); civil conspiracy against Ellisville and ATS (Count VI); unjust enrichment against ATS on behalf of the Edwards and Bissells (Count VII); and money had and received against ATS on behalf of the Edwards and Bissells (Count VIII).

Under Count I, all plaintiffs sought a declaratory judgment that the Ordinance was void, invalid, and/or unconstitutional. All plaintiffs sought further equitable relief under Counts IV and V, and monetary damages and attorneys' fees under Count VI. The Edwards and Bissells sought monetary damages under Counts IV and V, and sought restitution from Ellisville and

---

1. The trial court never certified the proposed classes, and Appellants have not raised any issues relating to class certification in this appeal.

ATS under Counts II, III, and VII and VIII.

In response to Appellants' petition, Respondents each filed separate motions to dismiss as well as a joint motion to dismiss. The trial court granted Respondents' motions and dismissed all of Appellants' claims with prejudice. Rather than providing an extended opinion, the trial court adopted the conclusions contained in Respondents' motions to dismiss. This appeal follows.

### Points on Appeal

Appellants present six points on appeal.[2] First, they claim that the trial court erred in declaring the Ordinance valid because the Ordinance is an unconstitutional and invalid exercise of Ellisville's police power. Appellants next assert that the trial court erred in finding the Ordinance valid because the Ordinance conflicts with Missouri state law. In their third point on appeal, Appellants argue that the trial court erred in finding the Ordinance valid when it deprived Appellants of their procedural due process right to be heard at a meaningful time and in a meaningful manner. Appellants' fourth point on appeal challenges the dismissal of their claims on the grounds of standing, waiver, and estoppel. Fifth, Appellants aver that the trial court erred in dismissing their claims for unjust enrichment because they properly pleaded the elements of unjust enrichment and the voluntary payment doctrine does not preclude the recovery of the fines paid. Finally, Appellants claim that the trial court erred in finding that Ellisville is protected from liability through the doctrine of sovereign immunity.

2. Appellants do not appeal the trial court's dismissal of their civil conspiracy or privilege

### Standard of Review

■ Review of a trial court's order granting a motion to dismiss is *de novo*. *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo.App.E.D.2008) (citing *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. banc 2007)). A motion to dismiss tests only the adequacy of a plaintiff's petition to determine whether the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case. *Otte v. Edwards*, 370 S.W.3d 898, 900 (Mo.App.E.D.2012). When reviewing a motion to dismiss for failure to state a claim, this Court assumes that all facts in the plaintiff's petition are true, and we must give the plaintiff the benefit of every favorable inference that may be reasonably drawn from the facts pleaded. *Rook v. Pub. Sch. Ret. Sys. of City of St. Louis*, 593 S.W.2d 905, 906 (Mo.App.E.D. 1980).

### Discussion

#### I. Standing, Waiver, and Estoppel

Because Appellants' fourth point on appeal challenges the trial court's judgment on the threshold issues of standing, waiver, and estoppel, we first address this point. Appellants argue that the trial court erred in finding that the Edwards and Bissells were barred from bringing their claims because they lacked standing, had waived their constitutional claims, and also were estopped from bringing their constitutional claims. Appellants also contend that the trial court erred in dismissing the Annins' and Cusumanos' claims for declaratory and injunctive relief because they have an adequate remedy at law.

A. *The trial court erred in finding the Edwards and Bissells lacked standing.*

against self-incrimination claims.

Respondents' joint motion to dismiss alleged that the Edwards and Bissells lacked standing to challenge the constitutionality of the Ordinance because they did not avail themselves of the procedures they are now challenging. Consequently, Respondents asserted that Counts IV and V should be dismissed in their entirety, and Count I should be dismissed to the extent it challenges the constitutionality of the Ordinance. Respondents also argued that the Edwards and Bissells lacked standing to challenge the Ordinance on grounds that the Ordinance was in conflict with state law because they did not claim any harm as a result of the alleged conflict. The trial court adopted Respondents' argument and entered its judgment dismissing Counts I, IV and V. The Edwards and Bissells now appeal the dismissal of these claims for lack of standing.

■■■ A party has standing to challenge the validity of an ordinance if standing is expressly conferred by statute or another applicable ordinance, or if the party can demonstrate that he or she is directly and adversely affected by the ordinance. *Miller v. City of Manchester*, 834 S.W.2d 904, 906 (Mo.App.E.D.1992). A party whose rights are or may be injuriously affected by the enforcement of an ordinance may attack its validity in proper proceedings. *State ex rel. City of St. Louis v. Litz*, 653 S.W.2d 703, 706 (Mo. App.E.D.1983) ("Any party who alleges they are directly adversely affected by an ordinance may raise the question of the unconstitutionality or invalidity of the ordinance."). Standing relates to a party's personal stake in the outcome of a proceeding. *Id.*

■■■ Here, Respondents argue that the Edwards and Bissells lack standing to pursue their constitutional and conflict with state law claims in the present litigation. Respondents bifurcate their standing argument, first challenging the Edwards' and Bissells' standing to raise their constitutional claims because they did not avail themselves of the procedures they now challenge as unconstitutional. Respondents next argue that because neither the Edwards nor the Bissells were harmed by the alleged conflict between the Ordinance and state law, they lack standing to challenge the Ordinance on grounds of conflict.

We do not address the standing arguments relating to the constitutional claims because that issue is mooted by our holding that the Edwards and Bissells have waived their right to raise such claims in this litigation and are estopped from advancing such claims. Were we to hold that the Edwards and Bissells have standing to raise their constitutional claims, we are still precluded from considering the substance of said claims due to waiver and estoppel. We therefore decline to consider the issue of standing on the constitutional claims, but address the standing issue as to the conflict claims.

The essence of Respondents' challenge to standing on the conflict claim raised by the Edwards and Bissells is the lack of harm to them as a result of the enforcement of the Ordinance. The authorities cited by Respondents in support of their argument are factually distinguishable from the case at hand. *See Belton v. Bd. of Police Com'rs of Kansas City*, 708 S.W.2d 131, 138–39 (Mo. banc 1986) (noting in dicta that appellant would not have standing to challenge the constitutionality of a statute that was not invoked); *State v. Stottlemyre*, 35 S.W.3d 854, 861 (Mo.App. W.D.2001) (appellant lacked standing to challenge statute as amended when the amendment was not in effect at time crime was committed and was not applied to his case); *State v. Brown*, 502 S.W.2d 295, 305 (Mo.1973) (appellant who chose not to invoke insanity defense could not then chal-

lenge the constitutionality of statute that was not applied to him).

In each of the cases cited by Respondents, the appellant challenged a statute that had not been applied to his or her case. In contrast, here, the Edwards and Bissells affirmatively challenged the validity and constitutionality of an ordinance that directly affected them. The Edwards and Bissells each received citations pursuant to the Ordinance, and each paid a $100 fine to avoid further legal action. Both the Edwards and Bissells were adversely affected by the Ordinance and, as a result, they now have standing to challenge the validity of the Ordinance. *See Unverferth v. City of Florissant,* 419 S.W.3d 76, 86 (Mo.App.E.D.2013).

B. *The trial court properly found that the Edwards and Bissells were precluded from raising their constitutional claims on the grounds of waiver and estoppel.*

■ A recurring issue raised in the several red light camera cases that this Court has heard in recent months is whether the parties bringing their claims against the municipality and ATS are precluded from doing so due to the principles of waiver and estoppel. In particular, Respondents in this case argue that the Edwards' and Bissells' constitutional claims were properly dismissed by the trial court because they did not raise such claims at the earliest opportunity as required by Missouri law. Respondents further argue that the Edwards and Bissells were estopped from raising such claims when they accepted their conviction and paid the $100 fine. Given the facts of this case, we agree.

■ It is well recognized in Missouri that a constitutional question must be presented at the earliest possible moment "that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived."

*Callier v. Dir. of Revenue,* 780 S.W.2d 639, 641 (Mo. banc 1989). "The critical question in determining whether waiver occurs is whether the party affected had a reasonable opportunity to raise the unconstitutional act or statute by timely asserting the claim before a court of law." *State ex rel. York v. Daugherty,* 969 S.W.2d 223, 225 (Mo. banc 1998).

In the red light cases of *Unverferth v. City of Florissant,* 419 S.W.3d at 89, and *Smith v. City of St. Louis,* 409 S.W.3d 404, 412–14 (Mo.App.E.D.2013), we held the doctrine of waiver did not preclude the parties from raising constitutional claims in their civil action even though the parties had not raised these claims in their earlier municipal proceeding. We declined to apply the waiver doctrine in those cases because the notices of violation issued by those municipalities did not contain a court date or provide instructions on how to obtain a court hearing. The notices of violation in those cases merely instructed the recipient as to the amount of the fine, payment due date, and where to send the check. *Id.* In *Unverferth* and *Smith,* we found that the lack of any information regarding a court hearing deprived the appellants of a reasonable opportunity to raise the constitutionality of the Ordinance in municipal court as contemplated in *York. Id.* As a result, the failure to raise any constitutional issue and payment of the fine in the municipal proceeding did not constitute a conscious decision by the appellants in those cases to forego any defenses to the alleged violation. *Id.*

Unlike the circumstances in *Unverferth* and *Smith,* here the Notice of Violation issued by Ellisville expressly informs alleged violators how to obtain a court hearing should they choose to challenge the violation. The Notice of Violation contains a section titled "**COURT HEARING,**" in which recipients are told not to send pay-

ment if they wish to dispute the Notice of Violation. The recipient of the Notice of Violation is informed that he or she will then receive a Notice to Appear in court. Additionally, a separate provision contained in the Notice of Violation informs the recipient that failure to pay the fine amount on or before the due date will result in a Notice to Appear in court. Equally important to our analysis, the Ordinance plainly states that if an owner requests a hearing in municipal court, the matter will be scheduled for arraignment and the owner will receive notice of the time and date of the hearing. The Ordinance expressly provides the procedure for prosecuting violations in municipal court.

These factors distinguish this case from *Unverferth* and *Smith* and require a different holding on the issue of waiver. Unlike the red light camera enforcement mechanism in Florissant and the City of St. Louis, the Ordinance and Notice of Violation in Ellisville clearly notified and informed the Edwards and Bissells of their option to appear in court. Neither the Edwards nor Bissells were left to speculate how they might challenge the Ordinance should they so choose. The record supports a finding that both the Edwards and Bissells had a reasonable opportunity to raise the alleged unconstitutionality of the Ordinance prior to their filing of this action. By choosing not to raise their constitutional concerns at the earliest opportunity, they have waived whatever constitutional claims they may have had. See *York*, 969 S.W.2d at 225.

■■■ Our holding with regard to waiver is supported by the related doctrine of estoppel. In their joint motion to dismiss, Respondents cite *York* as support for their argument that the Edwards and Bissells were legally estopped from raising their constitutional challenges to the Ordinance

once they accepted the judgment imposed on them by paying the $100 fine.

In *York*, the court held that estoppel precluded the parties from challenging a judgment of dissolution of marriage on the ground that it was signed by a family court commissioner pursuant to a statutory grant of authority that was later determined to be unconstitutional. *Id.* at 224–25. The court noted that a party assuming the benefits or burdens of a judgment is estopped from later attacking that judgment. Quoting *Tremayne v. City of St. Louis*, 320 Mo. 120, 6 S.W.2d 935 (1928), the *York* court stated:

> It has often been said that a void judgment is no judgment; that it may be attacked directly or collaterally. . . . It neither binds nor bars anyone. . . . [Y]et, notwithstanding, a party to such judgment may voluntarily perform it, by paying the amount adjudged against him and, when paid, no inquiry will be made as to the validity of the judgment; or he may perform the acts required by a void decree, or accept its benefits, and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it, either directly or indirectly.

*Id.* at 225 (quoting *Tremayne*, 6 S.W.2d at 946).

■■■ In *Unverferth*, this Court noted that *Tremayne* discussed the concept of estoppel under the framework of *res judicata*. *Unverferth*, 419 S.W.3d at 90. "*Res judicata*, more commonly referred to as claim preclusion, precludes the relitigation of the same cause of action that has been previously adjudicated by a final judgment on the merits, or from later raising a claim arising from the same set of facts that should have been raised in the first suit." *Unverferth*, 419 S.W.3d at 90 (citing *Kinsky v. 154 Land Co., LLC*, 371 S.W.3d 108,

112 (Mo.App.E.D.2012)); *see also Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002) (village was precluded from bringing a second action for damages after receiving declaratory and injunctive relief in first action). Claim preclusion applies not only to those issues on which the court in the former case was required to pronounce judgment, "but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991). "In other words, if *res judicata* applies, the doctrine precludes a litigant from bringing claims that should have been brought in the first suit." *Lauber–Clayton, LLC v. Novus Properties Co.,* 407 S.W.3d 612, 618 (Mo.App.E.D.2013) (citation omitted).

We applied these principles in *Unverferth* and held that the appellant could be estopped from relitigating claims that she had raised in her municipal court proceeding *or claims that she could have raised in municipal court. Unverferth,* 419 S.W.3d at 90. However, because Unverferth pleaded that the Notice of Violation lacked a court date and provided her with no information on how to challenge the violation, we found that she lacked the necessary information to allow her to make a voluntary decision to pay the $100 fine. *Id.* Because Unverferth pleaded facts sufficient to defeat the defense of estoppel on a motion to dismiss, we remanded the matter to the trial court for a factual determination of whether estoppel prevented Unverferth from raising her constitutional claims in the subsequent civil action. Li at *9.

Here, we are not presented with the same facts that required a remand in *Un-*

*verferth.* We recognize that, as in *Unverferth,* the pleading alleges that Ellisville's Notice of Violation does not contain a court date. However, the Notice of Violation attached as an exhibit to the petition clearly informs recipients how to proceed should they wish to contest the violation rather than pay the fine. Unlike the Notice of Violation in *Unverferth,* recipients of Ellisville's Notice of Violation are not left wondering what alternatives, if any, they have to paying the fine. The Edwards and Bissells had clear options, were informed of those options, and could have raised their constitutional claims in the Ellisville municipal court proceeding. Because they chose not to raise such claims at their municipal proceedings and they paid the $100 fine, they are now estopped from collaterally attacking the judgment imposed upon. Accordingly, the trial court properly dismissed the Edwards' and Bissells' constitutional claims.

C. *The trial court did not err in dismissing the Annins' and Cusumanos' claims for declaratory and injunctive relief because they have an adequate remedy at law.*

 Appellants also argue that the trial court erred in dismissing the Annins' and Cusumanos' claims for declaratory and injunctive relief because no adequate remedy at law exists under which they could bring their claims. Appellants claim that because they face multiple prosecutions under the Ordinance, there is a basis for equitable relief. We disagree and hold that the trial court correctly dismissed the Annins' and Cusumanos' claims.

 A declaratory judgment "should be used with caution and, except in exceptional circumstances plainly appearing, it is not to be used and applied where an adequate remedy already exists." *State ex rel. Freeway Media, L.L.C. v. City of Kansas City,* 14 S.W.3d 169, 173

(Mo.App.W.D.2000). The declaratory judgment procedure cannot be used where a different specific statutory method of review is provided. *Id.* (petition for declaratory judgment was improper when ordinance provided procedure for other remedies at law); *see also State ex rel. Dir. of Revenue v. Pennoyer,* 872 S.W.2d 516, 518–19 (Mo.App.E.D.1994) (circuit court lacked authority to entertain declaratory judgment action challenging constitutionality of law authorizing suspension or revocation of driving privileges pending trial *de novo* of drivers arrested for DWI because there were specific and adequate statutory procedures for challenging administrative ruling under statute).

Here, the Annins and the Cusumanos have a legal remedy for challenging their municipal ordinance violation. The Notice of Violation sent to an accused informs the recipient that failure to pay the fine by the due date will result in a Notice to Appear in court. The reverse side of the Notice of Violation also includes a clause that specifically instructs recipients not to send payment if they wish to dispute the violation notice at a court hearing. The Annins and the Cusumanos also have the right to a trial *de novo* before a circuit judge should they not prevail at their municipal court hearing. Section 479.200.[3] Because the Annins and the Cusumanos have an adequate remedy at law, the trial court did not err in dismissing their cause of action for declaratory judgment.

▪ Similarly, an injunction is an equitable remedy, and equitable relief is warranted only where the legal remedies available to a plaintiff are inadequate or incomplete. See *Home Shopping Club, Inc. v. Roberts Broad. Co.,* 989 S.W.2d 174, 180 (Mo.App.E.D.1998). "[T]he mere invalidity of a municipal ordinance is not alone sufficient ground for enjoining its enforcement." *Bhd. of Stationary Engineers v. City of St. Louis,* 212 S.W.2d 454, 458 (Mo.App.St.L.1948). Rather, a person asserting that a municipal ordinance is invalid has an adequate remedy at law by raising the invalidity as a defense to the proceeding against him in municipal court. *Id.*

▪ To warrant the intervention of a court of equity, the plaintiff must show that the enforcement of the ordinance would deprive him or her of property rights without adequate redress by legal remedy, or that injunctive relief is required to prevent a multiplicity of actions for violation of the ordinance. *Id.* "When it is proven that attempted enforcement of an ordinance will result in so many prosecutions that the remedy at law is inadequate, then a basis for injunctive relief is shown." *Jackson v. City of Kansas City,* 601 S.W.2d 681, 682 (Mo.App.W.D.1980) (plaintiff failed to show irreparable injury when he had been arrested only one time and the facts in the case merely showed that the city intended to enforce the ordinance).

Here, we reject the Annins' and Cusumanos' claim that they have no adequate legal remedy because they presently face prosecution under the Ordinance, and such prosecution is capable of repetition in the future. The Annins and Cusumanos submit that the "multiplicity of actions" exception applies because requiring each prospective plaintiff in this purported class action to challenge the Ordinance in municipal court "each and every time they are cited" would subject them to the expense, vexation, and annoyance of such a multiplicity of proceedings.

As this Court has previously noted, this argument conflates a multiplicity of actions

---

3. All statutory references are to RSMo. Cum. Supp. (2012).

against one plaintiff with a multiplicity of actions against a large number of plaintiffs. *Unverferth*, 419 S.W.3d at 92–93; *Ballard v. City of Creve Coeur*, 419 S.W.3d 109, 118 (Mo.App.E.D.2013). Appellants and the class of plaintiffs they seek to represent are subject to multiple prosecutions only if they continue to be charged with a violation of the Ordinance. These facts alone do not constitute a multiplicity of actions as contemplated by Missouri courts. *Compare Jackson v. City of Kansas City*, 601 S.W.2d 681, 682 (Mo.App. W.D.1980) (plaintiff did not face multiplicity of actions when he had been arrested only one time and the facts in the case merely showed that the city intended to enforce the ordinance) *with Bhd. of Stationary Eng'rs v. City of St. Louis*, 212 S.W.2d 454, 458 (Mo.App.St.L.1948) (plaintiffs were subjected to a multiplicity of actions when ordinance required them to hold a special license to perform their jobs and they were threatened with arrest each day they were found to be working in violation of the ordinance).

The Annins and Cusumanos have failed to show that enforcement of the Ordinance will result in a multiplicity of prosecutions rendering the remedy at law inadequate. They, as well as each potential plaintiff in the purported class they represent, are entitled to a hearing in municipal court as well as a trial *de novo* in associate circuit or circuit court. Because the Annins and Cusumanos have an adequate remedy at law, the trial court did not err in dismissing their claims for declaratory and injunctive relief under Counts I, IV, and V.

Point Four is denied.

## II. Ellisville's Authority to Enact the Ordinance

Having addressed the procedural aspects of this appeal, we now consider the substantive claims challenging the validity of the Ordinance. In their first point on appeal, the Edwards and Bissells [4] contend that the trial court erred in finding the Ordinance was enacted pursuant to a legitimate exercise of Ellisville's police power, constitutional authority, or statutory authority. The Edwards and Bissells further claim that the Ordinance is an invalid exercise of police power because it is solely a revenue-generating measure.

*A. Ellisville has authority to enact ordinances regulating traffic as an exercise of its police power because traffic regulation is rationally related to public safety and welfare.*

The Edwards and Bissells launch the identical attack on a municipality's reliance on its police power to enact the Ordinance that this Court recently addressed in *Ballard*: that because the Ordinance regulates only "non-moving, non-obstructive vehicular presence by a non-driver," it bears no rational or substantial relationship to public safety and is therefore an invalid exercise of Ellisville's police power.

A city's police power is "the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society." *Engelage v. City of Warrenton*, 378 S.W.3d 410, 414 (Mo.App.E.D.2012) (internal quotations omitted). A city has no inherent police power but rather enjoys only that police power conferred to it through a specific delegation by the state. *Id.* "With regard to traffic control, the State of Missouri has granted municipalities the authority to exercise its police power by making 'additional rules of the road or traffic reg-

---

**4.** Because the trial court appropriately dismissed the Annins' and Cusumanos' claims, we address the remainder of the appeal solely with regard to the Edwards and Bissells.

ulations to meet their needs and traffic conditions' as long as the ordinance's provisions are consistent with and do not conflict with state law." *Smith,* 409 S.W.3d at 425 (citing Section 304.120; *City of Creve Coeur v. Nottebrok,* 356 S.W.3d 252, 261 (Mo.App.E.D.2011)). However, as we have consistently cautioned, even though a municipality is granted authority to enact an ordinance pursuant to its police power, the ordinance must still bear a rational relationship to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality, and it must conform with state law on the same subject. *See Bezayiff v. City of St. Louis,* 963 S.W.2d 225, 229 (Mo.App.E.D.1997); Section 71.010.

■ Emphasizing the statutory requirement that municipal regulation may not conflict with state law, the Edwards and Bissells posit that the Ordinance necessarily regulates only vehicles that are not in motion and not obstructing traffic. To expand the regulation beyond these parameters, they argue, would place the Ordinance in direct conflict with Sections 302.302[5] and 304.151.[6] Furthermore, because the Ordinance imposes liability based upon vehicle ownership, the Edwards and Bissells contend that the Ordinance regulates only non-drivers of the vehicle. The Edwards and Bissells reason that because the Ordinance targets only non-moving, nonobstructive vehicular presence in an intersection by a non-driver, the Ordinance logically has no rational or substantial relationship to public safety because a non-driver who is not moving a vehicle and not obstructing traffic cannot

rationally be said to pose a danger to traffic passing through an intersection. As we held in *Ballard,* we are not persuaded by such a constricted interpretation of the Ordinance. *Ballard,* 419 S.W.3d at 124.

This Court has previously recognized that a red light camera ordinance that reduces the dangerousness of intersections by targeting vehicles that violate traffic regulations is rationally and substantially related to the health, safety, peace, comfort, and general welfare of the public and is a valid exercise of a city's police power. *Smith,* 409 S.W.3d at 425; *Ballard,* 419 S.W.3d at 120. We find no merit in the argument that the Ordinance's focus on vehicle owners necessarily deprives the Ordinance of any effect on the safety of motorists traveling through such intersections and, correspondingly, on public health, safety, and welfare. Because ensuring the safe flow of traffic through an intersection "is substantially related to the health, safety, and welfare of the public," Ellisville's ordinance may constitute a valid exercise of its police power. *See Ballard,* 419 S.W.3d at 120.

**B.** *The Ordinance constitutes an additional rule of the road or traffic regulation that purports to meet Ellisville's needs or traffic conditions.*

■ The Edwards and Bissells next argue that the Ordinance is an invalid exercise of Ellisville's statutory authority to enact ordinances because it is not an additional rule of the road or traffic regulation that is reasonably related to a need

---

**5.** Section 302.302 governs the assessment of points against drivers' licenses for moving violations.

**6.** Section 304.151 provides for a fine of not less than ten and not more than fifty dollars

for obstructing the regular flow of traffic on a state highway. However, the Edwards' and Bissells' argument regarding Section 304.151 was never presented to the trial court and, thus, is not preserved for appellate review.

or traffic condition, as required by Section 304.120.

The parties concede that Ellisville has authority under Article VI, Section 19 of the Missouri Constitution to enact ordinances, provided the ordinances are consistent with state law and are not limited by or denied by Ellisville's own charter or Missouri statute. The Edwards and Bissells argue that the limitations of Section 304.120 authorize municipalities to make only "additional rules of the road or traffic regulations to meet their needs and traffic conditions." They further contend that Ellisville exceeded its statutory authority by regulating "a make-believe danger" of a non-moving, non-obstructive vehicular presence, the occurrence of which is so extraordinary, that such regulation could scarcely be embraced as a genuine traffic condition under the meaning of Section 304.120.

As we discussed in *Ballard*, we reject this inordinately narrow application of the Ordinance. *See Ballard*, 419 S.W.3d at 121. A fair and reasonable reading of the plain language of the Ordinance shows that the Ordinance regulates vehicular presence in an intersection while the traffic signal is emitting a steady red light. Logic suggests that vehicular presence in an intersection may be a factor contributing to the safety of a roadway intersection. *Id.* We are unwilling to hold that targeting vehicular presence in an intersection while the traffic signal is emitting a steady red light lacks any rational or substantial relationship to the health, safety, peace, comfort, and general welfare of the public. *Id.* To the contrary, such an ordinance, if truly enacted for the purpose of regulating traffic, is a type of additional rule of the road Ellisville is authorized to enact under Section 304.120, provided that the Ordinance does not conflict with state law.

C. *The Edwards and Bissells are entitled to challenge Ellisville's purported exercise of police power on the issue of revenue generation.*

The Edwards and Bissells next claim that the Ordinance is void as an invalid exercise of Ellisville's police power because Ellisville's true purpose in enacting the Ordinance is to generate revenue rather than to increase safety at intersections. In their petition, the Edwards and Bissells allege that the Ordinance is merely a revenue-generating scheme designed to generate income based on vehicle ownership alone, as opposed to a legitimate safety measure. They now argue that discovery should have been allowed to develop and prove the factual basis of their allegation that the Ordinance was enacted for an unlawful purpose and is thus invalid.

In *Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355, 363 (Mo. 1960), the Missouri Supreme Court stated that an ordinance enacted under the police power of a municipality to regulate its traffic may not be a tax ordinance "in the guise of an ordinance enacted under the police power. It is for the court to determine, on all the pertinent facts, whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power." *Id.* While the amount of revenue and its purpose are factors the court should use to determine whether the ordinance is primarily a revenue-generating measure, it may also consider "other relevant facts that bear on the question of the basic nature of the ordinance." *Id.*

Although Ellisville may possess authority to enact traffic-related ordinances under its police power, such power is not without limits. *St. Charles Cnty. v. St. Charles Sign & Elec.*, 237 S.W.3d 272, 275 (Mo. App.E.D.2007). The Edwards and Bissells alleged in their petition that the true pur-

pose of Ellisville's red light camera ordinance is to make money rather than keep dangerous drivers off the road. They also aver that red light cameras do not increase public safety, but rather increase accidents and injuries at intersections. Whether Ellisville enacted the Ordinance as a proper exercise of its police power as opposed to an unlawful revenue-generating tax measure that falls outside of its police power authority is a fact question that is inappropriate for resolution on a motion to dismiss. *See Ballard,* 419 S.W.3d at 122.

We reverse the trial court's judgment declaring that the Ordinance was properly enacted pursuant to Ellisville's police power for regulating public safety and the trial court's dismissal of Count I. We normally would remand this matter to the trial court to allow the parties the opportunity to develop, through discovery, evidence relating to the revenue-generation allegations set forth in the petition. However, any order of remand is mooted by our holding that the Ordinance is void because it conflicts with state law. Point One is granted as to the Edwards' and Bissells' revenue-generation claim.

## III. Conflict with State Law

The issues having the most far-reaching implications for municipal red light camera legislation are presented in the second point on appeal, which more narrowly focuses on whether the Ordinance is void as a matter of law because it conflicts with state law. This Court recently reviewed a similar municipal ordinance regulating the presence of a vehicle in an intersection in *Ballard.* However, because the parties in *Ballard* did not challenge on appeal whether that municipal ordinance conflicted with state law, and was therefore void and unenforceable, we were precluded from addressing that issue.

Here, the Edwards and Bissells have raised this critical issue on appeal and argue that the trial court erred in finding that the Ordinance did not conflict with Missouri state law and dismissing their claims alleged in Count I. Specifically, the Edwards and Bissells submit that the Ordinance conflicts with Section 304.281, a Missouri statute governing traffic signal violations, and Sections 302.225 and 302.302, Missouri statutes governing the assessment of points on drivers' licenses for moving violations.

It is not disputed that, under Missouri law, "[n]o ordinance shall be valid which contains provisions contrary to or in conflict with" the state's traffic regulations. Section 304.120.3. In particular, "[a]ny municipal corporation in this state ... having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the state ... shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject." Section 71.010. A municipal ordinance is void if it conflicts with the general laws of the state. *McCollum v. Dir. of Revenue,* 906 S.W.2d 368, 369 (Mo. banc 1995). "The test for determining if a conflict exists is whether the ordinance 'permits what the statute prohibits' or 'prohibits what the statute permits.'" *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 211 (Mo. banc 1986) (quoting *Page Western, Inc. v. Cmty. Fire Protection Dist.,* 636 S.W.2d 65, 67 (Mo. banc 1982)). "The ordinance may supplement a state law, but when the expressed or implied provisions of each are inconsistent and in irreconcilable conflict, then the statute annuls the ordinance." *Miller v. City of Manchester,* 834 S.W.2d 904, 907 (Mo. App.E.D.1992) (citing *Page Western, Inc.,* 636 S.W.2d at 67).

With such clear direction from the Missouri Supreme Court, we proceed with our analysis of this narrow legal issue, i.e., whether the Ordinance conflicts with any state law on the same subject.

A. *Section 304.281*

The Edwards and Bissells first argue that the Ordinance conflicts with Section 304.128, the state statute governing traffic signal violations. We agree. Titled "Rules for traffic where controlled by light signals," Section 304.281 states, in relevant part:

1. Whenever traffic is controlled by traffic control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of *vehicles and pedestrians* as follows ...

(3) Steady red indication

(a) Vehicular traffic facing a steady red signal alone shall stop before entering the crosswalk on the near side of the intersection at a clearly marked stop line but, if none, then before entering the intersection and shall remain standing until an indication to proceed is shown except as provided in paragraph (b);

(b) The driver of a vehicle which is stopped as close as practicable at the entrance to the crosswalk on the near side of the intersection or, if none, then at the entrance to the intersection in obedience to a red signal, may cautiously enter the intersection to make a right turn....

2. Notwithstanding the provisions of section 304.361, violation of this section is a class C misdemeanor.

Section 304.281 (emphasis added). In part, Section 304.281 prohibits the conduct colloquially known as running a red light.

Importantly, Section 304.281 only regulates the conduct of drivers and pedestrians. The Edwards and Bissells challenge the validity of the Ordinance because it places strict liability for red light violations on vehicle *owners* and only vehicle owners, regardless of who was driving the vehicle at the time of the violation. The underlying premise of this argument is that the Ordinance regulates the same conduct covered by Section 304.281—running a red light. The difficulty presented by this legal challenge is that the plain language of the Ordinance regulates vehicular *presence* in an intersection, whereas the state statutes clearly regulate the conduct of running a red light. Before deciding if the Ordinance is in conflict with state law, we must first determine whether the Ordinance regulates the same conduct as Section 304.281; that is, we must decide if the conduct of "being present" in an intersection during a red light is the equivalent conduct of running a red light.

The Ordinance provides:

1. *Violation.* It shall be unlawful for a motor vehicle to be present in an intersection controlled by a traffic control signal when:

a. The signal is emitting a steady red signal for the direction of *travel* or orientation of the vehicle in or through the intersection; or

b. The signal is emitting a steady red signal for the direction of travel or orientation of the vehicle in or through the intersection and the vehicle *fails to stop* prior to making a right-hand turn as provided in Section 315.060(3) of this Code.

2. *Penalty—owner's liability.*

a. Any owner whose motor vehicle is found to be in violation of this Section

shall, upon conviction, be fined the sum of one hundred dollars ($100.00).

The Notice of Violation provided to accused violators of the Ordinance further provides:

It has been determined that your vehicle has *proceeded into an intersection by crossing the stop line* when the traffic control signal, for the direction *in which your vehicle was traveling,* was emitting a steady red signal. *Red light running damages the public by endangering vehicle operators and pedestrians alike* (emphasis added).

When interpreting laws, we afford them a practical interpretation and must not ignore common sense or evident statutory purpose. *Concord Pub. House, Inc. v. Dir. of Revenue,* 916 S.W.2d 186, 194 (Mo. banc 1996); *State v. Hobokin,* 768 S.W.2d 76, 77 (Mo. banc 1989). Moreover, we must avoid interpretations that are "unjust, absurd, or unreasonable." *Burns v. Elk River Ambulance, Inc.,* 55 S.W.3d 466, 485 (Mo.App.S.D.2001).

Here, a common-sense interpretation of the Ordinance mandates a finding that the conduct regulated by Ellisville is not a fictional "presence" in an intersection during a red light, but rather the actual movement of a vehicle through an intersection during the emission of a red light, commonly referred to as "running a red light." Logically, a vehicle cannot *travel* into an intersection or *fail to stop* when the traffic signal is red without movement—i.e., running a red light. We fully understand Ellisville's attempt to design a system of red light camera regulation to withstand the judicial scrutiny that has accompanied the enactment of such legislation throughout this country. However, despite its efforts, we remain unconvinced that the semantics employed by Ellisville and other Missouri municipalities with the term "presence" successfully circumvents the legislative prohibition of Section 304.120.3. Giving the Ordinance a logical interpretation and common sense application, it is clear that the Ordinance regulates the conduct of traveling into and through an intersection during a red light. We see no reasonable way to be present in an intersection without traveling into the intersection. Our reading of the Ordinance is supported not only by words used in the Ordinance by its drafters, but also in the express language found in Ellisville's Notice of Violation, which informs the alleged violator that "your vehicle has *proceeded* into an intersection *by crossing* the stop line when the traffic control signal, for the direction in which *your vehicle was traveling,* was emitting a steady red signal" and that *"red light running"* endangers both drivers and pedestrians. We will not disregard logic when applying the plain meaning of the language of the Ordinance to determine the conduct regulated by the Ordinance—which we find is running a red light. We hold that the Ordinance regulates the same conduct as Section 304.281.

Because the Ordinance regulates the same conduct as Section 304.281, said Ordinance is valid and enforceable only if its provisions do not conflict with state law. We find that a clear conflict exists between the Ordinance and state law. Section 304.281 imposes the rules regarding traffic control signals on drivers of vehicles and pedestrians. If a driver or a pedestrian violates the rules that apply when a steady red signal is indicated, he or she may be charged with a class C misdemeanor. Section 304.281.2. In contrast, the Ordinance imposes the rules regarding traffic signals on *owners* making them strictly liable for running a red light regardless of who was driving the offending vehicle. The Ordinance unmistakably permits what the statute prohibits—prosecution and penalization of persons who are neither drivers nor

pedestrians for running a red light. This municipal expansion of liability for running a red light conflicts with the state statute regulating the same subject. Because the Ordinance is in conflict with Section 304.281, the Ordinance is void and unenforceable as a matter of law. Accordingly, the trial court erred in declaring the Ordinance valid and dismissing Count I.

B. *Sections 302.225 and 302.302*

 The next prong of the conflict argument proffered by the Edwards and Bissells is that the Ordinance conflicts with state law relating to the assessment of points for moving violations, specifically Sections 302.225 and 302.302. The Edwards and Bissells pleaded in their petition and now argue on appeal that any violation of the Ordinance constitutes a moving violation as defined by state statute, yet Ellisville has classified violations of the Ordinance as non-moving infractions for which no points may be assessed. The Edwards and Bissells maintain that the difference between the Ordinance and the state statutes regulating moving violations is a conflict that renders the Ordinance void and unenforceable. We agree.

Section 302.225 imposes a mandatory requirement that courts report moving violation offenses to the Department of Revenue within seven days of any plea or finding of guilty. A moving violation is plainly defined by state statute as "that character of traffic violation where at the time of violation the motor vehicle involved is in motion." Section 302.010(13). The definition of a moving violation is fundamental to the interpretation of Section 302.302, which establishes Missouri's point system for the suspension and revocation of licenses. Section 302.302 instructs the director of revenue to put a point system into effect and *requires* the assessment of two points to the driver's license of any person who commits a moving violation.

Section 302.302.1 ("The director of revenue shall put into effect a point system for the suspension and revocation of licenses. Points shall be assessed ... as follows: Any moving violation of a state law or county or municipal or federal traffic ordinance ... 2 points.").

 The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *Oak Creek Whitetail Ranch, L.L.C. v. Lange*, 326 S.W.3d 549, 550 (Mo. App.E.D.2010). The term "shall" is used in laws, regulations, or directives to express what is mandatory. *Allen v. Pub. Water Supply Dist. No. 5 of Jefferson Cnty.*, 7 S.W.3d 537, 540 (Mo.App.E.D. 1999). Here, the plain language of Section 302.302 requires the assessment of two points on the driver's license of any person who is convicted of a moving violation of a municipal ordinance. Moreover, municipal courts are required to report to the director of revenue all moving violations of municipal ordinances within seven days of any plea or finding of guilt. Section 302.225.1. Municipalities lack the authority to alter this statutory mandate.

Both the Ordinance and the accompanying Notice of Violation state that an infraction of the Ordinance constitutes a nonmoving violation. This characterization and municipal designation fails as a consequence of our holding that, despite the semantics utilized in drafting the Ordinance, the conduct actually regulated by the Ordinance is running a red light. "Common sense and collective experience suggest that a person cannot fail to stop at a red light without being in motion." *Unverferth*, 419 S.W.3d at 98. Without question, the conduct regulated by the Ordinance involves movement, regardless of Ellisville's decision to classify the violation as "non-moving." By failing to require the municipal court to report a violation of the

Ordinance as a moving violation to the director of revenue for the assessment of points, Ellisville permits what state law prohibits—a moving violation without the assessment of points. Because the Ordinance allows a driver to commit a moving violation without being assessed points on his or her license, the Ordinance conflicts with Missouri law. *See Cape Motor Lodge, Inc.,* 706 S.W.2d at 211 (an ordinance is in conflict with state law if it permits what the statute prohibits or prohibits what the statute permits).

Under Missouri law, two points must be assessed to the driver's license of any person who violates the Ordinance. *See* Section 302.302. No municipality is exempt from the statutory mandate. The petition alleges that the Ordinance conflicts with Sections 302.225, 302.302, and 302.010(12). Our reading of the Ordinance and the state statutes confirms such conflict. As a matter of law, this conflict renders the Ordinance void and unenforceable. We acknowledge that our conclusion differs from our prior holding in *Nottebrok,* which held that a similar red light camera ordinance regulating "presence" did not conflict with Missouri law governing the assessment of points for moving violations. To the extent our holding conflicts with our opinion in *Nottebrok, Nottebrok* is overruled and no longer good law.

We hold that the trial court erred in declaring that the Ordinance does not conflict with Missouri law relating to the assessment of points for moving violations, and we reverse the trial court's judgment granting Respondents' motions to dismiss with regard to Count I.

Point Two is granted.

## IV. Procedural Due Process

The Edwards and Bissells raise their constitutional due process claims in their third point on appeal. Specifically, they argue that Ellisville's prosecution of the Ordinance violates Article I, Section 10 of the Missouri Constitution because the Notice of Violation deprives the accused of the right to be heard at a meaningful time and in a meaningful manner and, therefore, the trial court erred when it dismissed Count V of their petition.

We have already ruled that the Edwards and Bissells waived their right to pursue their constitutional claims in this litigation by not raising such claims at the earliest opportunity-their municipal court proceeding. We have also held that the Edwards and Bissells are estopped from raising their constitutional claims in this proceeding because they could have raised their claims at a municipal court hearing, but chose to pay the fine instead. As a result, we do not reach the issue of whether Ellisville's Ordinance or its prosecution thereof violates the procedural due process protections of Article I, Section 10 of the Missouri Constitution, and we affirm the trial court's dismissal of Count V.

## V. Unjust Enrichment

In their fifth point on appeal, the Edwards and Bissells argue they properly pleaded the elements of a claim for unjust enrichment, and that their claims are not barred by the voluntary payment doctrine. We disagree. Consistent with our opinions in *Ballard, Unverferth* and *Smith,* we hold that the voluntary payment doctrine precludes the Edwards and Bissells from recovering as restitution the fines paid under the Ordinance.

In their joint motion to dismiss, Respondents argued that the Edwards' and Bissells' claims for unjust enrichment and money had and received under Counts II, III, VI, and VIII should be dismissed because they voluntarily paid their respective fines. The Edwards and Bissells posit

that the voluntary payment doctrine does not apply to their case because they paid their fine under a mistake of law and under duress. They further argue that the application of the voluntary payment doctrine is a question of fact that cannot be resolved on a motion to dismiss.

This Court recently addressed the issue of voluntary payment of a municipal fine in *Smith, Unverferth,* and *Ballard.* In those cases, we acknowledged that Missouri law recognizes the voluntary payment doctrine as a defense to claims for unjust enrichment and money had and received. *See Smith,* 409 S.W.3d at 419–20; *Unverferth,* 419 S.W.3d at 106; *Ballard,* 419 S.W.3d at 122–23; *Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 726 (Mo. banc 2009). Under the voluntary payment doctrine, a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover the payment, even if the money is paid without sufficient consideration and under protest. *Id.* Money voluntarily paid to another under a claim of right to the payment, and with knowledge of the facts by the person making the payment, is not recoverable on the ground that the claim was illegal or that there was no liability to pay in the first instance. *Am. Motorists Ins. Co. v. Shrock,* 447 S.W.2d 809, 811–12 (Mo.App. K.C.1969). This is true even when the payor wrongly believes that the demand for payment was legal. *Id.*

We recognize that certain exceptions exist to the voluntary payment doctrine. Notably, restitution may be granted when payment is made under mistake of fact. However, this exception does not apply if the mistake is one of law. *Id.* "[W]here money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made ... under a mistake of law." *Pitman v. City of Columbia,* 309 S.W.3d 395, 404 (Mo.App.W.D.2010) (quoting *Am. Motorists Ins. Co.,* 447 S.W.2d at 811). "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Id.*

In their petition, the Edwards and Bissells allege that they "paid the fine under the reasonable, but mistaken, belief that the Ordinance was valid." Such a mistake is not one of fact, but rather one of law. *See Unverferth,* 419 S.W.3d at 107 ("a mistake as to the validity and enforceability of an ordinance is an issue of law"). Despite their claim that the application of the voluntary payment doctrine is a question of fact that cannot be resolved on a motion to dismiss, the petition alleges a mistake of law, which precludes our application of the mistake of fact exception to the voluntary payment doctrine. *See id.*

The Edwards and Bissells further argue that even if they paid their fines under a mistake of law, they are nevertheless entitled to restitution because their mistake was induced or accompanied by inequitable conduct by the other party. We do not find such circumstances present in this case. As a matter of law, Ellisville was entitled to presume that its Ordinance was valid, and thus enforceable at the time Ellisville sent violation notices to the Edwards and Bissells. *See Cmty. Fed. Sav. & Loan Ass'n v. Dir. of Revenue,* 752 S.W.2d 794, 797 (Mo. banc 1988) ("Governments are entitled to presume that statutes are constitutional."). The facts alleged in their petition do not support a claim that Ellisville induced the parties to pay the fine or acted inequitably when enforcing its Ordinance.

Again, our holding recognizing the distinction between a mistake of fact and

mistake of law is consistent with our holding in similar red light camera cases. *See Ballard*, 419 S.W.3d at 121–23; *Unverferth*, 419 S.W.3d at 107. The cases cited by the Edwards and Bissells to support their assertion that courts no longer distinguish between a mistake of fact and a mistake of law are unpersuasive, as neither outright rejects the distinction between a mistake of law and mistake of fact. *See Western Cas. & Sur. Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo.App.E.D.1982) ("This does not mean that the traditional analysis is irrelevant. It is still necessary to consider the nature of the mistake, the circumstances under which it was made, the conduct of the payee, and so on, insofar as these factors indicate whether it would be 'unjust' to permit retention of the benefit."); *Handly v. Lyons*, 475 S.W.2d 451, 462 (Mo.App.K.C.1971).

We further note that the Edwards and Bissells do not plead the level of duress required to defeat the defense of voluntary payment. In their petition, the Edwards and Bissells alleged that they paid the $100 fine under duress because Ellisville threatened to arrest and imprison them. However, nothing in the Notice of Violation attached to the petition suggests that the parties would be arrested for failing to pay the fine. To the contrary, the Notice of Violation states that failure to respond to the notice will result in a Notice to Appear in municipal court "and you may be charged with a new offense." Moreover, the Ordinance expressly provides that "[u]nder no circumstances may a person be imprisoned for such violation [of the Ordinance]. . . ." While the Ordinance does allow for additional prosecution for failure to appear at a scheduled hearing in municipal court, "it is not duress to do, or threaten to do, what one has a right to do." *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 371 (Mo.App.W.D.1996). Ellisville is entitled to pursue legal action against an alleged violator if he or she fails to respond to a Notice to Appear in municipal court. *See Sch. Dist. of Kansas City, Mo. v. Missouri Bd. of Fund Com'rs*, 384 S.W.3d 238, 275 (Mo.App.W.D.2012) (recognizing that Missouri courts do not recognize the threat of legitimate legal process as duress because the party threatened is entitled to plead and prove that he is not liable).

Because the voluntary payment doctrine bars the Edwards and Bissells from receiving restitution under the theories of unjust enrichment and money had and received, this Court need not determine whether the petition properly pleaded the elements of a claim for unjust enrichment. Point Five is denied.

## VI. · Sovereign Immunity

In their final point on appeal, the Edwards and Bissells contend that the trial court also erred in dismissing Count V because Ellisville is protected by sovereign immunity. The Edwards and Bissells claim that constitutional causes of action are not subject to sovereign immunity and, therefore, they are not precluded from raising their procedural due process claims. They also assert that sovereign immunity does not bar an action for money had and received.

Again, because the doctrines of waiver and estoppel bar the Edwards and Bissells from raising their constitutional procedural due process claims, the issue of whether Ellisville is immune from said claims is moot. *See Lucas v. Lucas*, 307 S.W.3d 712, 714 (Mo.App.E.D.2010) (quoting *Reynolds v. City of Valley Park*, 254 S.W.3d 264, 266 (Mo.App.E.D.2008)) ("A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any prac-

tical effect upon any then existing controversy.").

Likewise, because the claims for money had and received set forth in the petition are barred by the voluntary payment doctrine, we need not determine whether sovereign immunity applies to the facts of this case. *See Huch,* 290 S.W.3d at 726 (the voluntary payment doctrine "is a recognized defense to an action for money had and received"). Point Six is denied.

### Conclusion

This Court is acutely aware of the political debate that has engulfed the issue of municipal red light camera enforcement. These political arguments, as passionate as they may be, have no bearing on our decision as we are guided only by applying firmly established legal principles to the facts of the record before us. As noted in this opinion, we have recently heard and issued opinions in three other red light camera cases, each of which has differed to some degree in the facts and issues presented on appeal.

Given the facts and issues raised in this appeal, we hold that the trial court erred in finding the Edwards and Bissells lacked standing to bring their claims against Ellisville. The Edwards and Bissells were injured by the Ordinance and, therefore, have standing to challenge its validity. However, we affirm the trial court's judgment finding that the Edwards and Bissells are precluded from raising their constitutional claims due to the doctrines of waiver and estoppel. As a result, we affirm the trial court's dismissal of Count I with regard to the constitutional claims only and do not consider whether the Ordinance violates procedural due process as alleged in Count V or whether sovereign immunity protects Ellisville from constitutional claims. We further affirm the judgment of the trial court dismissing the claims of the Annins and Cusumanos because they have an adequate remedy at law and may present their claims in their municipal court proceeding.

With regard to the Edwards' and Bissells' claim that Ellisville lacked authority to enact the Ordinance, we reverse the trial court's judgment declaring that the Ordinance was properly enacted pursuant to Ellisville's police power for regulating public safety and the trial court's dismissal of Count I in that respect. While we would normally remand this matter to the trial court to allow for discovery on the issue of the revenue-generation allegations set forth in the petition, any remand is mooted by our holding that the Ordinance is void and unenforceable because it conflicts with state law.

We reverse the trial court's judgment dismissing Count I. The Ordinance conflicts with Missouri law on the same subject in violation of Section 304.120.3. In particular, the Ordinance conflicts with Sections 304.281, 302.225, and 302.302. Accordingly, the Ordinance is void as a matter of law and is unenforceable.

Finally, although the Ordinance is void and unenforceable, we hold that the Edwards and Bissells are unable to receive restitution of the fines previously paid by them as a result of Ellisville's prosecution of the Ordinance. The voluntary payment doctrine provides Ellisville a complete defense to actions for unjust enrichment and money had and received. Therefore, we affirm the trial court's dismissal of Counts II, III, VII, and VIII.

The recent decisions of this Court addressing municipal red light camera legislation properly draw attention to various legal issues intertwined with such regulation. The systems of red light camera regulation we have reviewed, whether as drafted or as applied by the municipality,

are in conflict with one or more of Sections 304.281, 302.225, and 302.302, and are therefore void and unenforceable. Our recent opinions provide guidance to Missouri's municipalities with regard to such regulation, whether from the perspective of notice and due process, or the more substantive issue of conflict with state law. Municipal ordinances and procedures can be revised to address the constitutional due process concerns raised regarding the requirement of notice. However, absent a change in either Missouri state law, or a revision of municipal ordinances to eliminate any conflict between their ordinances and state law, municipal red light camera regulation will continue to run afoul of Section 304.120.3, and will hence be void and unenforceable.

MARY K. HOFF, P.J., and ANGELA T. QUIGLESS, J., concur.